VALENTINE WERK

*v.*

THE ILLINOIS STEEL COMPANY.

*Filed at Ottawa January 15, 1895.*

1. TRIAL—*where proof is clear, court may direct verdict.* A verdict for defendant should be ordered, in an action for personal injuries, where the evidence of contributory negligence on the part of the plaintiff is so clear and convincing that no verdict in his favor on that issue should be allowed to stand.

2. NEGLIGENCE—*facts constituting contributory negligence as matter of law.* An employee engaged in turning up a ladle used for carrying molten iron upon a railroad truck, is guilty of contributory negligence which will defeat his recovery for injuries sustained in placing his foot upon the rail near the truck wheels, when he knows the truck may at any moment be moved by an engine coupling to trucks upon the same track, there being a safe place in which he could stand while performing his work.

*Werk* v. *Illinois Steel Co.* 54 Ill. App. 302, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This was an action on the case, brought by Valentine Werk, against the Illinois Steel Company, to recover damages for two personal injuries suffered by the plaintiff, as is alleged, in consequence of the negligence of the defendant. The first injury occurred some time in May or June, 1891, and consisted of burns, by means of molten metal, upon the plaintiff's ankles and the lower part of his legs, and the latter occurred October 5, 1891, and consisted, as is alleged, of injuries to the plaintiff's foot, hip, spine and head, caused by a "ladle," which the plaintiff was assisting in turning up, being suddenly started and driven against him. The issues relating to the first of these injuries were submitted to the jury, who found a verdict in relation thereto in favor of the plaintiff, and assessed his damages at $256. As to the other alleged injury, the court, after the evidence was all in, gave to the jury a peremptory instruction to find the issues for the defendant, which was done. The court thereupon, after denying the plaintiff's motion for a new trial, gave judgment in his favor for $256 and costs, and that judgment, on appeal by the plaintiff to the Appellate Court, was affirmed, and the plaintiff, by a further appeal, now brings the record to this court.

The plaintiff, at the time of his injuries, was, and for between three and four years had been, in the employ of the defendant. For the first two years he was employed in the yard, and after that, for eighteen months, he was engaged in "turning up ladles" on what is known as the "hot metal hill," and it was there his injuries were received. The "hot metal hill" is a broad embankment, considerably raised above the surrounding country, and is situated just outside of the defendant's Bessemer Converting Works, in South Chicago. Upon this embankment are three railway tracks, three feet or more apart, running north and south, the space between them being vacant. East of the east track is a structure known as a cupola. The tracks, at the north end, lead into the

converting works or steel mill, and at the south they gradually converge until they unite, by means of a switch, into one long track, which curves away, with a steep decline, towards the south and east, and connects the hot metal hill with the blast furnaces.

Along this track, coming from the south and up the single track with the steep incline, trains or strings of full "ladles," which consisted of large, kettle-shaped receptacles for molten metal, swung upon pinions and mounted upon ordinary railroad trucks, are pushed by a locomotive engine from the blast furnaces to the top of the hill. Here it is customary to place them on the most easterly of the three tracks on the hill, but sometimes, when the locomotive has brought more ladles than can conveniently be accommodated on the easterly track, a part of them are placed on the middle track. When so placed, another locomotive engine approaches the ladles from the opposite direction, and takes them, one by one, into the steel mill, where they are "turned down," so as to pour the molten metal into the converters, which are east of the east track and at about the middle of the hill, then, when a ladle is emptied, it is pushed out by the same locomotive and placed upon the most westerly of the three tracks on the hill, and the steel mill locomotive then returns for another full ladle on the easterly or middle track. All this operation takes place from the north. In the meanwhile, the locomotive which has brought the full ladles up the hill from the furnaces, and which, when on the hill, operates from the south, having left its ladles on the easterly or middle track, goes back to the switch, and thence returns on the westerly track and takes away the empty ladles which have been placed there by the locomotive from the steel mill, and returns them to the blast furnaces.

These operations are, and at the time of the injuries to the plaintiff were, continuous, taking place several times every hour, and they were always performed in

substantially the same manner.   Every time the locomotive pushed the ladles loaded with molten metal up the hill and placed them on one or the other of the two easterly tracks, it would switch over to the westerly track, couple on to the empty ladles and take them down the hill to the blast furnaces.

It was upon this west track that the plaintiff was employed in turning up ladles which had been turned down at the steel mill.   His duties were, first, to take a position on the east side of the ladle when it was brought from the steel mill, and examine its interior, so as to see whether any metal, in cooling, had adhered to its sides or rim, and to clean it off with an iron bar provided for that purpose, and, after seeing that the ladle was properly cleaned, to pass to the north end of it, and, with the aid of another workman, to turn it up.   This was done by means of a ratchet and screw, the ratchet hanging downward from the screw.   Two men were required to do the work, and they turned up the ladle by taking hold of the ratchet, and with a push-and-pull motion of the arms moved it back and forward about two feet, away from and towards the ladle, and while doing this, according to the plaintiff's testimony, the place for the workmen to stand was one pace away from the ladle.

The plaintiff's injury of October 5, 1891, occurred in the latter part of the night, the plaintiff being then engaged with another laborer in turning up the most northerly of a string of ladles then standing empty on the westerly track.   All the others seem to have been already turned into position.   The plaintiff, as the evidence tends to show, instead of taking his position between the rails, at a distance of a pace from the ladle, as was usual, placed his foot, which was subsequently injured, on one of the rails of the track, near to or against the wheel of the truck, and had it in that position at the time he was injured.

The locomotive from the blast furnaces had just brought ladles filled with molten metal and placed them on one or both the other tracks, and then switched over on to the westerly track, for the purpose of coupling on to the empty ladles and taking them back to the blast furnaces, as was usual. In making the coupling it moved the ladle on which the plaintiff was at work a very short distance north—the distance it was moved being placed by the plaintiff's fellow-laborer, the only witness who testified on that point, at half an inch to an inch—and the wheel of the truck was driven on to the plaintiff's foot, so as to bruise it considerably all the way from his toes to his ankle. He testified that he was also thrown down by the concussion, and injured in his hip, spine and head.

At the trial the defendant contended that the plaintiff, by standing where he did while assisting in turning up the ladle, and especially by having his foot on the rail immediately in front of the wheel of the truck, when he knew, or ought to have known, that the engine was about to couple on to the empty ladles for the purpose of taking them to the blast furnaces, was guilty of contributory negligence which should preclude his recovery, and the trial court so held, and upon that ground gave the instruction to find for the defendant, so far as that injury was concerned. The Appellate Court, in affirming the judgment, handed down the following opinion :

"WATERMAN, J.: We do not understand counsel for appellant to dissent from the position of appellee, that in order to recover for injuries occasioned by negligence it must be alleged and proved that the party injured was, at the time he was injured, observing due or ordinary care for his personal safety. What they do insist is, that the question of whether the party injured was at the time observing ordinary care for his personal safety must always be submitted to a jury, and that there can be no conduct so reckless and indifferent to obvious dan-

ger that a court may pronounce the same to be clearly a want of ordinary care, and therefore refuse to submit the cause to a jury.

"We understand the rule to be, that whether a party was in the exercise of ordinary care is a question of fact, to be determined by the jury, and that it is only where the facts are such that a reasonable mind can draw from them but one conclusion, that negligence may be inferred as a matter of law; that where reasonable minds may differ, negligence is a question of fact. *L. S. & M. S. Ry. Co.* v. *Johnsen,* 135 Ill. 641; *I. C. R. R. Co.* v. *Nowicki,* 46 Ill. App. 566; *St. P. & K. C. Ry. Co.* v. *Anderson,* 47 id. 91; *Lincoln Ice Co.* v. *Johnson,* 37 id. 453; *C. & E. I. Ry. Co.* v. *O'Connor,* 119 Ill. 586; *Chicago City Ry. Co.* v. *Robinson,* 127 id. 12; *Terre Haute & Ind. Ry. Co.* v. *Voelker,* 129 id. 540; *Abend* v. *Railroad Co.* 111 id. 202; *Simmons* v. *Railway Co.* 110 id. 340; *Breeze* v. *Powers,* 80 Mich. 172-178; Cooley on Torts, 670-804, (2d ed.); Beach on Contr. Negligence, 454; *Lake Shore Foundry Co.* v. *Lakowski,* Mar. Term, 1894, Ill. App.

"The burden of showing that he was in the exercise of ordinary care is upon the party seeking to recover for a personal injury occasioned by the alleged negligence of another. (*Calumet Iron and Steel Co.* v. *Martin,* 115 Ill. 358-370.) A bare scintilla of evidence is not enough to entitle a party to recover. *Simmons* v. *Railroad Co.* 110 Ill. 340-346; *Bartelott* v. *International Bank,* 119 id. 259-292; *Phillips* v. *Dickerson,* 85 id. 11-15.

"While questions of negligence or of contributory negligence are ordinarily questions of fact, to be passed upon by a jury, yet when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict in opposition to it, the court may withdraw the case from the consideration of the jury and direct a verdict. *Railroad Co.* v. *Houston,* 95 U. S. 697; *Shofield* v. *Railway Co.* 114 id. 615; *Railroad Co.* v. *Converse,* 139 id. 469; *Aerkfetz* v. *Humphrey,* 145 id. 418.

"In the present case, it appears that appellant had for eighteen months continuously worked at the place, and in the doing of the very thing, at which he was engaged when injured in October, 1891. He was not only entirely familiar with the way in which the work of pushing up and removing these cars was done, but he had, only a few months previously, been injured because an engine pushed a car up the incline not easily, but so that it bumped. He also must have known that it 'is practically impossible for a locomotive to always push a train of heavy cars up an incline with such steady gentleness that they will not come with a force dangerous to a human limb, if it be between the cars and an object against which they are pushed. The daily observation of every one who witnesses the coupling of cars, even upon a level, teaches this. Notwithstanding this, he stood with his foot on the track on which the cars were being pushed,—stood so that the car holding the ladle upon which he was working, being pushed, as his witness, the companion working with him, says, half an inch or an inch, his foot was caught under the wheel. There is not a scintilla of evidence to show that there was any necessity for his placing his foot on the rail. His companion, doing the same work that appellant was, remained uninjured. Appellant was injured because his foot was on the rail. This no reasonable, unbiased mind can doubt. His complaint is, that no warning was given of the approach of the cars. He does not show that it was customary to give, or that he had any reason to expect, warning, and it clearly appears but that for want of his ordinary care he would not have been injured.

"Appellant's counsel, in the reply brief by them filed, say that appellant flatly contradicts Polark's statement that appellant had his foot on the rail. We have searched the record in vain to find such contradiction. Appellant did testify as follows : 'Mr. Brandt: Were you between the two rails of the track that this ladle was on?   A. Yes.'

This is very far from being, as counsel assert, a contradiction of the statement of plaintiff's witness Polark that appellant had his foot on the rail. On the contrary, it is entirely consistent with Polark's statement. Undoubtedly, if there were any dispute in the evidence about this, on a motion to instruct the jury to find for the defendant, the doubt should be resolved in favor of the plaintiff. The plaintiff, after Polark had testified, was again called to the witness stand, but failed to deny Polark's statement that he, appellant, had his foot on the rail.

"Photographs of appellant's person, showing the scars thereon, etc., were used on the trial. These photographs are not included in the record, but there is a description given by appellant of the injury to and scar upon his right foot, and from this it is manifest that it was cut while he was standing with it upon the rail. Appellant testified: 'Q. Now, then, tell how you were hurt; tell what the hurts were—I don't mean the manner? A. When I was struck I was dazed, and I didn't know what was the matter with me, and my partner dragged me from the track over to the scales, and then they notified the foreman, Brady. Q. Whereabouts was the wound—how far did it extend? A. It was on the foot—right on top of the foot. Q. Which foot? A. That was on the right foot. Q. How far did it go back on the foot? A. The foot was sore up to the ankle, and it hurt me from about the knee and about the thigh; I struck my hip.' Mr. Brandt: 'I ask you this question: If this scar which appears—I want the jury to see that scar; the scar extending along the top of the foot from about the division between the second toe from the little one and running up to the ankle —was that scar on there, or anything of the kind, before the ladle ran on you in 1891? A. No, I didn't have any scar or mark before.' Upon cross-examination appellant testified: Mr. Prentice : 'You said that at the time of

the accident, in October, your foot was under the wheel when you fell. Do you mean that the wheel went over your foot completely? A. No, the wheel stopped on my foot; I was crying aloud and they stopped it. Q. It just pushed your foot along the track a little way, was that it? A. No; I don't know.'

"If appellant was exercising ordinary care and appellee was guilty of negligence in moving the ladle, and appellant was injured in consequence thereof, then, as counsel for appellant urge, it is immaterial whether the ladle was moved an inch, "a yard or a mile." There is no direct evidence, save that of Polark, as to the distance the ladle was moved, while there is evidence undisputable that appellant was not in the exercise of ordinary care.

"As to the accident in May or July, 1891. This suit to recover for the accident of October, 1891, was begun December 14, 1891. A declaration based upon that accident, only, was filed January 6, 1892. The declaration was, on the 10th day of March, 1892, amended by the filing of additional counts, one of which was based on the accident of July, 1891. The case upon the accident by burning seems to have been fairly tried and submitted, and we see no sufficient reason for interfering with the conclusion arrived at by the court and jury.

"Appellant complains that the court refused to instruct or tell the jury that the plaintiff had not asked for any instructions. We do not think that a court should be required to do this. Instructions should be given to the jury, not as the defendant's or plaintiff's, or as requested by either, but as given by the court.

"The judgment of the Superior Court is affirmed."

BRANDT & HOFFMAN, for appellant.

WILLIAMS, HOLT & WHEELER, and E. PARMALEE PRENTICE, for appellee.

Per CURIAM: The plaintiff's counsel have filed in this court the same brief and argument filed by them in the Appellate Court, and a further argument criticising that part of the opinion of that court which sustains the instruction of the trial court requiring the jury to find the issues in relation to the plaintiff's injury of October 5, 1891, in favor of the defendant. We have carefully examined the record in the light of those arguments, and upon such examination are disposed to concur with the conclusions reached by the Appellate Court. We think the evidence of contributory negligence on the part of the plaintiff is so clear and convincing that no verdict in favor of the plaintiff on those issues should have been allowed to stand. Under these circumstances it became the duty of the trial court to direct a verdict for the defendant.

Some complaint seems to have been made in the Appellate Court of the rulings of the trial court in relation to the other branch of the case, and the case is submitted, so far as that branch of it is concerned, upon the brief filed in the Appellate Court. After giving the points there made careful consideration we are disposed to think, with the Appellate Court, that the case, so far as it relates to the injury for which the jury rendered their verdict, was fairly submitted, and that none of the points made upon the instructions are tenable. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*