## Raymond G. Hewes v. Chicago & Eastern Illinois Railroad Company.

Gen. No. 11,825.

1. ORDINARY CARE—*essential to recovery in action for personal injuries.* In order to recover in an action for personal injuries it is essential that the plaintiff prove that he was exercising ordinary care for his personal safety at the time of the alleged injury.

2. ORDINARY CARE—*how question of, determined.* Whether the plaintiff in a particular case exercised ordinary care, or whether he was guilty of negligence, which contributed to the injury complained of, are, ordinarily, questions of fact to be passed upon by the jury. But, when the evidence that the plaintiff did not exercise ordinary care, but, on the contrary, was guilty of negligence which contributed to the injury, is so plain that men of reasonable minds could not reasonably differ, the question becomes one of law.

3. CONTRIBUTORY NEGLIGENCE—*when passenger guilty of.* A passenger is guilty of contributory negligence where he deliberately swings out from the step of the rear platform of a car, into the darkness of the night, while the car is moving and about from 150 to 200 feet distant from a station without any necessity for so doing, and merely for the purpose of going to the smoking

car which was next in front of the car on the rear platform of which he was standing.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 27, 1905.

BRANDT & HOFFMANN, for appellant.

CALHOUN, LYFORD & SHEEAN, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of the appellee and against appellant, rendered on a verdict directed by the court, at the close of the plaintiff's evidence. The facts are substantially as follows: The defendant, appellee here, has two railroad tracks which are about six feet apart, and lie north and south, at Columbia Heights, in Cook county, and also a station or passenger depot at Columbia Heights, east of the tracks. The west track is the south-bound and the east the north-bound track. Two hundred feet, or a little more, north of the depot there was, at the time of the accident hereinafter mentioned, a cattle guard between the defendant's two tracks. The cattle guard was in the shape of a truncated A, wider at bottom than at top, and about 18 inches wide at the top. It was between 4½ and 5 feet in height. At the bottom it was close to the end of the tie of the west track, which tie extended about a foot outside the rail, and the body of the car, in passing the guard, would be about 6 inches distant from it. The floor of the car in question was about 18 or 20 inches above the lower step of the platform of the car. Between the rails of each track there were flat pieces of metal so constructed and arranged that cattle could not pass over them. From the place where the cattle guard was a wire fence extended on each side of the double track to the fence on the line of defendant's right of way. The plaintiff, Hewes, was born April 1, 1875, and was 17½ years and a few days of age October 11, 1892, when the accident happened. Prior to the time of the acci-

dent he had been working in a factory at Crete. Between 6:30 and 7 o'clock October 11, 1892, he desired to go from Chicago Heights to Crete. Columbia Heights is about two miles from Chicago Heights, and Crete about 1½ miles from the latter place. The train which passed Chicago Heights, and which the plaintiff took, consisted of an engine and tender, a baggage car, a smoker and a passenger coach. When the plaintiff came to the train he was smoking a cigar; the train was about to start and he got on the rear platform of the rear or last car of the train. He looked into the car and noticed, sitting therein, his uncle, who was a minister, and his wife, and dodged back so that his uncle would not notice him, and stood against the end of the car, on the east side of it. The train was running on the west track. Plaintiff testified that he continued smoking while on the rear platform, and when the train was approaching Columbia Heights and he heard the whistle blow at the whistling post north of the platform, and for the purpose of going to the smoking car, stepped down to the last step of the platform, on the east side of the car, took hold of both "hand-holes" and swung himself out, so that his side projected beyond the line of the car, and that just as he swung out something struck him on the left hip, and he fell and was injured. Plaintiff remained on the rear platform from the time he boarded the car until he swung out as stated, although there was room in the car, had he chosen to go inside. Asked why he did not go inside, he answered, "Well, two or three reasons why we didn't go in. I was smoking. I had not been smoking very long, and I was kind of fraid to go through the car. I noticed my uncle in there, a minister, sitting there with his wife." In saying "we," he included a companion who was with him on the platform. The plaintiff had with him a monthly ticket, entitling him to ride between Chicago Heights and Crete, and, as previously stated, it was a mile and a half from Columbia Heights to Crete, for which latter place he was bound.

Two of plaintiff's witnesses testified that the accident occurred about 7 o'clock in the evening, and that it was

dark. This is uncontradicted. One of plaintiff's witnesses, who was in the rear car, testified that when he got out of the train at Columbia Heights, to go back to the rear end of it on account of having heard a scream, the rear end of the train was about 150 feet south of the cattle guard; another, that the rear car, in which he was riding, stopped 75 feet north of the center of the station. Rohe, who had been riding in the rear car heard the plaintiff scream, and when the train stopped he ran back with the conductor, and found plaintiff lying between the rails of the west or south-bound track, about 200 feet north of the station and about 25 or 30 feet south of the cattle guard. Plaintiff testified that it usually takes about five minutes to go from Chicago Heights to Columbia Heights, and that, prior to the accident, he had not paid his fare, and it does not appear from the evidence that, prior to that time, he had been seen by any of the train crew. The speed of the car at the time of the accident is not shown. One witness, who was a passenger in the rear car, testified that he thought the train ran from Chicago Heights to Columbia Heights at the rate of 25 miles per hour; but, if so, this speed was, doubtless, lessened as the train approached the station at Columbia Heights, where it stopped. To entitle plaintiff to recover, it was incumbent on him to prove that he was exercising ordinary care for his personal safety at the time of the alleged injury. Calumet Iron & Steel Co. v. Martin, 115 Ill. 358, 368, citing very many cases. Whether the plaintiff, in such case as the present, exercised ordinary care, or whether he was guilty of negligence which contributed to the injury complained of, are, ordinarily, questions of fact to be passed on by the jury; but, when the evidence that the plaintiff did not exercise ordinary care, but, on the contrary, was guilty of negligence which contributed to the injury, is so plain that men of reasonable minds could not reasonably differ, the question becomes one of law. Werk v. Ill. Steel Co., 154 Ill. 427, 432; C. & N. W. Ry. Co. v. Hansen, 166 ib., 623, 629. Such we regard the evidence to be in this case. Had the plaintiff gone inside the car; had he even remained on the

rear platform, exercising such care as the situation required; had he passed through the rear car to the smoking car, into which he desired to go, he would have been safe. But instead of doing any one of these things, he deliberately swung out from the step of the rear platform of the car into the darkness of the night, while the car was moving and was about 150 to 200 feet distant from the station, without any necessity for so doing, and merely for the purpose of going to the smoking car, which was next in front of the car on the rear platform of which he had been standing. Reasonable minds cannot, as we think, reach any reasonable conclusion other than that the plaintiff was guilty of negligence which contributed to the injury, and, in the absence of which, it would not have occurred. Therefore, the court did not err in instructing the jury to find the defendant not guilty.

The judgment will be affirmed.

*Affirmed.*