Horace W. Blood, Adm'r, Appellee, v. Illinois Steel Company, Appellant.

Gen. No. 5,016.

1. VERDICTS—*when set aside as against the evidence.* A verdict clearly against the preponderance of the evidence will be set aside on review.

2. MASTER AND SERVANT—*when doctrine of assumed risk applies.* A servant is held to have assumed the risk of injury when he voluntarily chooses a dangerous method in the performance of his work when the master has provided a safe one.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1908. Reversed. Opinion filed August 10, 1908.

GARNSEY & WOOD, for appellant; KNAPP, HAYNIE & CAMPBELL, of counsel.

FRANK J. WISE and J. W. DOWNEY, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case brought by Horace W. Blood, administrator of the estate of William T. Poole, deceased, against the Illinois Steel Company, to recover damages for the benefit of the next of kin, on account of the death of the intestate, alleged to have been caused by the negligence of appellant, April 17, 1906, while the deceased was working in appellant's roll mill. A jury returned a verdict for $9,000. A *remittitur* of $2,500 was entered and judgment rendered for $6,500. The defendant prosecutes this appeal.

The cause was submitted to the jury on four counts of the declaration which aver that the defendant negligently furnished a crane of insufficient strength to move certain heavy rolls, and that the mechanism of the crane was out of repair and unsafe, of which fact the defendant had notice, etc. No question is raised but that a cause of action is stated in the declaration.

The principal assignment of error, and the only one necessary to discuss, is that the judgment cannot be sustained on the evidence. The roll shop of appellant is a building in which heavy rolls used for the purpose of rolling iron or steel ingots into bars were dressed and turned down in lathes. The rolls are of different sizes, varying in weight from five hundred pounds to fourteen tons. Two large cranes worked by electric power are used in placing the rolls into and in taking them out of the lathes and in moving the rolls from one part of the shop to another. The deceased was a man forty-six years of age who had worked in this shop for several months. Three weeks before the accident he had been promoted to be a cranesman. The foreman had instructed the deceased as to the management and use of the various appliances, and the deceased appeared to have operated the crane satisfactorily. As cranesman the deceased had general charge of the cranes, operating, oiling and adjusting them as he found necessary. The cranes are about twenty feet

high, the boom being a few feet below the ceiling. In moving a roll the movement is in two directions. The roll is hoisted and then by means of a trolley device the roll is shifted in or out on the boom of the crane, an operation known as "racking in" or "racking out." When light rolls are being moved the crane is managed by one man, and when the heavy rolls known as "bloom rolls" are being moved the cranesman has a helper. The levers, brakes and other appliances by which the crane is operated are situated at the bottom of the upright beam of the crane. Above the head of the cranesman where he stood at the levers and on the upright standard of the crane is a large iron gear wheel on the end of a shaft which winds up the heavy chain used in raising and lowering the rolls. This wheel is over four feet in diameter and has six spokes. A ladder hung on the wall twelve feet away from the crane. The purpose of this ladder was to climb about the crane to adjust or repair it when the repairs were beyond the reach of men on the floor. There was a friction brake on the hoisting mechanism of the crane at the foot of it, which had to be adjusted by tightening and loosening certain nuts according to the weight to be moved on the crane. The racking device is on the top of the crane and is independent of the hoisting device, except that the power is derived from the same shaft. The racking device was liable to get out of adjustment and it was the duty of the cranesman to adjust it, and whenever he could not adjust it machinists were sent to fix it. At the time of the accident the deceased and a helper were moving a thirteen-ton roll out of the lathe. The roll was raised up and then it was desired to rack the roll out. The racking device would not move in response to the racking lever. The deceased asked his helper to take charge of the brake lever, and climbed up and stood on the top of the four-foot gear wheel on the upright, or on one of the spokes of the wheel, to adjust the turnbuckle or nut on the racking device at the top of the crane. While the deceased was standing on the gear-

wheel something caused the wheel to turn letting the roll drop, about a foot. The deceased lost his balance and fell, striking his head on a casting, fracturing his skull and inflicting injuries from which he shortly died. This accident happened on Tuesday. On the preceding Sunday the racking device would not work, and the deceased at that time adjusted it. On that occasion he did not climb on the wheel, but used the ladder which hung near for that purpose. A man named Keats, who had been cranesman for four years before the deceased, instructed him at that time in regard to the adjustment.

The appellee claims the racking device failed to work because it was out of repair. The appellant claims that the helper was negligent and let the brake lever slip or that the deceased had not properly adjusted the nuts on the friction brake for the weight of the roll to be moved. There is no evidence that the hoisting apparatus, which is independent of the racking mechanism, was defective or worn, and it was the movement of the hoisting apparatus that caused the deceased to fall. Independent of these respective contentions, it is not disputed that a ladder was a few feet distant to be used for the purpose of reaching the place the deceased climbed and stood upon the greasy wheel to reach. The wheel the deceased climbed upon was not placed there to be used as a ladder. There was a ladder near, and the deceased had very recently used it. He knew the great weight that was hanging on the wheel, which was held by the friction brake, the adjustment of which was under his charge and that he had placed it under the control of his assistant. He knew the danger he assumed in climbing on the wheel. Two methods were presented to him to adjust the racking device: A safe way, by using the ladder provided by his employer; and a dangerous way, not provided for that purpose by the master, but adopted by the employe. He must be held to have assumed the risk when he voluntarily chose a dangerous method in the performance of his work, when the master had provided a safe one. Kath

v. East St. Louis & Sub. Ry. Co., 232 Ill. 126; Werk v.
Ill. Steel. Co., 154 Ill. 427; O'Donnell v. MacVeigh, 205
Ill. 23; Kistner v. American Steel Foundries, 233 Ill.
35. The death of the appellee's intestate was caused
by his own negligence. The judgment is therefore re-
versed with a finding of fact.

*Reversed.*

Finding of fact to be incorporated in the judgment of
the court: The death of William T. Poole was caused
by his own want of ordinary care in the performance of
his work in a method voluntarily assumed by him when
the employer had provided a safe method.