## HENDRICKSON v. SWENSON.

The evidence, in an action for injury from plaintiff's buggy striking a stone placed by defendant in the side of a highway at the foot of a hill, of the manner in which he drove down the hill, laying down the reins of his young and spirited horses, and fumbling around for his mittens, **held** to show contributory negligence, as matter of law, authorizing direction of verdict.

(Opinion filed, November 14, 1911.)

Appeal from Circuit Court, Day County; Hon. FRANK Mc-NULTY, Judge.

Action by John Hendrickson against J. A. Swenson. Judgment for defendant. Plaintiff appeals. Affirmed.

*Scars & Potter,* for appellant. *Anderson & Waddel* for respondent.

CORSON, .J This is an appeal by the plaintiff from a directed judgment in favor of the defendant. The action was instituted by the plaintiff to recover damages alleged to have been sustained by him for personal injuries and partial destruction of his buggy.

It is alleged in the complaint: "That prior to the 6th day of May, 1910, the defendant wrongfully, and in violation of law, placed in the public highway, between sections 1 and 2, in the township of Webster, Day county, South Dakota, a certain obstruction, to wit, a large rock or stone about 3 feet by 2½ feet in size, and about 3 feet in thickness. That the said defendant placed said stone in the highway with the intent to obstruct public travel, and the same was an obstruction, and was dangerous to passing

teams. That, at the point where said obtruction was placed in said highway, the public travel was considerable and continuous. That, on the 6th day of May, 1910, this plaintiff was driving along said public highway with a team and buggy or light wagon the team being a young and spirited team and it being evening and dark, and the said stone being placed at the foot of the hill down which the road ran, the plaintiff, although exercising due care, ran into said stone, his horses being at that time going at a rapid gait, and by the contact with said stone plaintiff was thrown from his buggy onto the ground, and his face and head cut and severely injured. That said buggy was broken and rendered useless, and his team of horses broke loose therefrom and escaped from plaintiff. That the plaintiff was caused great suffering, pain, and inconvenience by reason of said injury, and his property was damaged thereby, both his horses and his wagon; and by reason of the said wrongful act of the defendant in placing said stone in said highway plaintiff has been damaged in the sum of $1,000, for which he asks judgment, together with his costs and disbursements of this action." The defendant denied generally and specifically each of the allegations of the complaint.

At the close of all the evidence, the defendant moved the court to direct a verdict in his favor, for the reason that the evidence fails to show that the plaintiff has been damaged, or that the damage was caused by any act on the part of the defendant. This motion was granted by the court, and the jury directed to return a verdict in favor of the defendant. The verdict being directed, a review of the evidence becomes necessary, as the only question presented by the record is, Was the court justified under the evidence in so directing a verdict in favor of the defendant?

Mr. Alley, being called as a witness on behalf of the plaintiff, testified in substance: That he was a surveyor; that he was familiar with sections 1 and 2 of Webster township, Day county; that he made measurements of the section line between sections 1 and 2 in that township; that there was a large stone near the corner of the fence; that the stone was of the size mentioned in the complaint, and that at its highest point was about 20 inches

above the ground; that the stone was located 25½ feet from the center of the road, and was 7½ feet inside of the 33-foot limit east of the center line; that south of the stone there was a hill of about 25 or 30 degrees slope, and extending about 100 feet; that just at the point in the highway near the stone there was a turn-off to the east, and just a little further north there was a marsh, and the road turned to the east to avoid the marsh. On cross-examination, he testified in substance that the road at the point near where the stone was turns to the east, and the section line goes straight to the north.

The defendant, being called as a witness for the plaintiff, testified in substance: That he was the owner of the fence at the corner where the stone described by Alley lay; that he built the fence and placed the stone there to protect the corner post.

The plaintiff, as a witness on his own behalf, testified in substance: That he lived 15 miles north of Webster; that he did his trading at that place, and traveled over the road testified to; that he traveled over that road about the 6th of May, 1910; that he was in Webster that day, and left for home about half past 10 in the evening; that he had a pair of colts, about three or four years old, hitched to the buggy; that on the way home that night he struck the stone Mr. Alley testified to at the foot of the hill; that it was lying right out from the corner post, and when he came down the road he had to turn east, and the buggy wheel happened to strike the stone, and he was thrown out and rendered unconscious for a time; that when he woke up his team had gone away with the neckyoke and whiffletrees; that the buggy was badly damaged; and that he was seriously injured about the face and body. And he describes the manner in which the accident occurred as follows: "I was driving these horses the same way I had always driven them. I was pretty dark, and I was driving without mittens, and just when I was on top of the hill I went down in my buggy box to get my mittens, and I got hold of one and tried to get that on, and tried to get the other one, and the horses turned before I got the lines; they started to go down hill. They turned where that rock is for the corner post. I did not see the stone be-

fore the buggy wheel was on it. I had the lines in my hand at the time." On cross-examination, he testified as follows: "I left town about half past 10. * * * I drove a pair of colts that night. These colts were pretty lively. I had not driven them very often to town. They were pretty spirited. They never ran away before this; this was the first time. I came down this hill, and was fumbling around for my mittens. This hill is 4½ miles from Webster. It was cloudy and pretty dark. I had not worn my mittens since starting from Webster. I had no trouble with the team. I had the lines down at the bottom to get the mittens. They started up, and I had the lines in my hand. They started to run down the hill—just trotting—a common-times trots. I cannot tell exactly how it happened. I was looking down in the buggy box; I couldn't look down in the buggy box and watch the team at the same time. I had traveled this road quite often before. * * * I had been in the habit of turning around this corner and driving down across Swenson's land before he fenced it; also after the fence was there. I took that angling road to avoid the slough on the section line to the north, and this stone was just at the point where you turned off the section. I had seen it there quite often before."

Dr. Schenecker, a witness sworn on behalf of the plaintiff, testified as to the injuries the plaintiff received; that he dressed the wounds, and about two or three weeks after this he dressed them again.

The defendant testified as a witness on his own behalf, but his evidence was not material, and is therefore omitted.

It is contended by the respondent in support of the ruling made by the court, directing a verdict, that it clearly appears from the evidence that the injuries of the plaintiff and his buggy were caused by his own contributory negligence, and that that was the proximate cause of the injury. It is contended, however, by the appellant that as to whether or not the injury was caused by the contributory negligence of the plaintiff was a question for the jury, and that under the facts proven the court was not justified in directing a verdict for the defendant.

Section 1663, P. C., provides that: "If any person shall willfully, carelessly or negligently obstruct or injure any public highway, public street or bridge, it shall be the duty of the road supervisor of the district in which such obstruction is placed or injury done to enter complaint in behalf of the people against the person or persons so offending. * * *"

Section 1747, P. C., provides: "Whoever at any time obstructs any of the public highways in this state in any manner with intent to prevent the free use thereof by the public, * * * shall be subject to a fine of not less than five nor more than twenty-five dollars. * * *"

The placing by the defendant of this stone extending into the highway was clearly a dangerous obstruction to the travel thereon by the public, and, had the plaintiff used ordinary care in the management of his team, he would undoubtedly have the right to recover from the defendant such damages as he sustained by reason of the injury. But, notwithstanding · the negligence of the defendant, if the plaintiff was guilty of contributory negligence which contributed to his injury, he would not be entitled to recover. "Reason and justice demand that two conditions should exist, namely, fault on the part of the party charged with causing the injury, and freedom from contributory fault on the part of the injured." McKeever v. Homestake Mining Co., 10 S. D. 599, 74 N. W. 1053. And: "Where the evidence is such that different minds may reasonably draw different conclusions as to contributory negligence, the question is for the jury. But, where the court can say from the evidence that ordinarily intelligent, reasonable, and fair-minded men would not and ought not to believe that the plaintiff was acting as an ordinarily prudent person would have acted under the circumstances, the question of plaintiff's contributory negligence is for the court." 29 Cyc. 631. And in the late case of Hewes v. Chicago & E. I. R. R. Co., 217 Ill. 500, 75 N. E. 515, the learned Supreme Court of Illinois, in discussing the law applicable to this class of cases, says: "The general rule is that negligence and contributory negligence are questions of fact for the jury, but when the facts are admitted, and all reasonable

minds will agree that the injury was the result of the plaintiff's own negligence, the court may, as a matter of law, find that there was such contributory negligence on the part of the plaintiff as to defeat a recovery, and so inform the jury by a peremptory instruction. Werk v. Ill. Steel Co., 154 Ill. 427 [40 N. E. 442]; Chicago & Northwestern Ry. Co. v. Hansen, 166 Ill. 623 [46 N. E. 1071]; Beidler v. Branshaw, 200 Ill. 425 [65 N. E. 1086]." And the law was so held by this court in the case of Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315, and seems to be sustained by the great weight of authority.

It would seem from the testimony of the plaintiff, giving him the benefit of every inference that might be drawn in his favor, that he failed to observe ordinary care while driving down the hill to the corner where the stone was placed by the defendant. It will be noticed that he says: "It was pretty dark, and I was driving without mittens, and just when I was on top of the hill I went down in my buggy box to get my mittens, and I got hold of one and tried to get that on, and tried to get the other one, and the horses turned before I got the lines; they started to go down the hill. They turned where that rock is for that corner post. I did not see the stone before the buggy wheel was on it. I had the lines in my hand at that time." It will be observed that on cross-examination plaintiff further states that he was driving a pair of colts that were pretty spirited, and he says, "I came down this hill, and was fumbling around for my mittens," and that he had the lines down at the bottom to get the mittens; that the team started to run down the hill; that he could not tell exactly how it happened; that he was looking down in the buggy box; and that he could not look down in the buggy box, and watch the team at the same time.

We are of the opinion that all reasonable and fair-minded men would arrive at the conclusion from this evidence that the plaintiff failed to exercise the ordinary care that fairly prudent men would have observed in driving a spirited team of colts on a dark night, in going down the hill to the corner around which he was to turn in making his trip homeward. The plaintiff failed

to act with the ordinary care and prudence that an ordinary man would have used, even in driving an old and well-broken team, in going down the hill over which the plaintiff passed. And, taking into consideration the fact that he was driving a young and spirited team of colts, which the plaintiff says had not been driven much, the conclusion is irresistible that the conduct of the plaintiff contributed very greatly, if not solely, to the injury he received.

It is contended by the appellant that the fact that the driver of a team, under such circumstances, lays down the lines "for a moment to clothe his hands with his mittens, in order to protect himself from the cold, is not a negligent act," and, "giving the evidence on this point the strongest possible inference favorable to defendant, it cannot be said that this act was a contributory cause to the injury. It merely produced a condition of things through which the defendant's act operated to produce the injury complained of. In such case, the authorities all hold that the defendant is still liable"—citing 21 Am. & Eng. Enc. of Law, 494, in which the learned author of the note on negligence says: "In the consideration of negligence as the proximate cause of injuries, the distinction between conditions and causes should be borne in mind. Where an alleged interventing cause upon which a defendant relies for his exoneration is in reality only a condition upon or through which the negligent act operated to produce the injuries complained of, the defendant will be held liable. So, if the defendant's act or omission supplied the conditions by which a subsequent act or cause, the occurance of which might have been expected, was rendered dangerous and hurtful, the defendant is responsible. But if, on the other hand, the defendant's act or omission was not a cause of the injuries, but was only a condition upon which some new, independent, and unforeseen cause operated, the latter is the proximate cause of the injuries, and the defendant's negligence is too remote."

The appellant further contends that, even if the defendant's contention that the acts of the plaintiff may have contributed to his injury were correct, yet whether they did or not was a ques-

tion for the jury, and the court had no right to refuse to submit it, and cited the case of Snee v. Telephone Co., 24 S. D. 361, 123 N. W. 730. But we are unable to agree with the appellant in this contention. In the case cited, the trial court refused to grant a motion to direct a verdict in favor of the defendant, and its ruling denying the motion was affirmed by this court; but it will be observed from the facts as stated in the opinion in the case that the evidence of contributory negligence on the part of the plaintiff was not such that all persons would agree that the act of the plaintiff in passing over the telephone wires under the circumstances was negligence on her part, and in view of the evidence in that case the decision of this court was clearly correct in following the general rule that the questions of negligence or contributory negligence are ordinarily matters for determination by the jury.

We are of the opinion, however, that the rule as above stated has no application to the case at bar. While it may be conceded that the defendant's act in placing the stone in the highway was a wrongful act, and that it would have ordinarily rendered him liable for the damages resulting to the plaintiff, had the plaintiff observed ordinary care in traveling along the highway, yet the negligence of the plaintiff, as shown by his testimony, was such as clearly to preclude him from recovering in this action. If, as contended by the appellant, the plaintiff, under the circumstances, in laying down his lines at the top of the hill, considering the nature of the team he was driving, and fumbling about his buggy box to get his mittens, exercised such ordinary care that different persons might conclude that he was not guilty of contributory negligence, of course the court was in error in directing a verdict. But it seems to us that fair-minded men would not differ that there was the want of ordinary care exercised by the plaintiff under the circumstances, and that all would agree that such conduct on the part of the plaintiff was not such as an ordinarily prudent man would have used under the same circumstances.

We are therefore of the opinion that the court was right in directing a verdict in favor of the defendant, and that the judgment of the court in directing the verdict and denying a new trial should be and are affirmed.