[Civ. No. 2635. Third Appellate District.—December 10, 1923.]

## LLOYD E. GRAYBIEL, Respondent, v. C. AUGER, Appellant.

[1] NEGLIGENCE—ENORMOUS TRAFFIC ON HIGHWAYS—JUDICIAL NOTICE —DUE CARE BY USERS.—The enormous traffic on the improved highways of the state of California, and of which the court may properly take notice, is such as to constitute the traveled portions thereof a definite danger zone necessitating due care and caution on the part of every user thereof to insure his own personal safety.

[2] ID.—REPAIRS ON HIGHWAY—CARE REQUIRED—CONTRIBUTORY NEG-LIGENCE.—Plaintiff's left-hand rear tire having collapsed as he was traveling southerly on an improved highway, causing him to stop for the purpose of changing tires, but because of shoulder con-struction work that was going on it having been impossible for him to remove the automobile from the traveled portion of the high-way, he was required to use very great care in keeping his machine and person on the westerly half of the improved portion of the highway and might readily be charged with contributory negligence if he allowed any portion of his person to get beyond the center line thereof.

[3] ID.—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE.—If plain-tiff's negligence contributed to the cause of the injury and the injury would not have resulted had his negligence not contributed thereto he cannot recover, unless it further appears that defendant had a last clear chance to avoid inflicting the injury.

[4] ID.—REMOVAL OF CAR TO SAFE PLACE—IMMATERIAL ISSUE.—If de-fendant had a last clear opportunity to avoid injuring plaintiff

---

4. Origin, function and mode of operation of the doctrine of last clear chance, note, 55 **L. R. A.** 418.

and could have done so by the exercise of due care, the question whether it was impracticable for plaintiff to remove his car to some other location for the purpose of making repairs is wholly immaterial.

[5] ID.—SUFFICIENT ROOM TO PERMIT PASSAGE—DUTY OF DEFENDANT. If plaintiff (who had been traveling southerly) was on the westerly side of the road and there was sufficient room for defendant (who was traveling northerly) to pass without injuring plaintiff it was his duty to move his car sufficiently to his right-hand side of the road as to admit of such passage without injury; and if defendant saw plaintiff in a position of danger at a time when his (defendant's) car was sufficiently distant to admit of his car being stopped or brought under such reasonable control in relation to its stopping as to admit of its passage by plaintiff without injury to him, then it was the duty of defendant to either stop his car or reduce its speed to such a degree as to enable him to pass by plaintiff without injuring him, even though plaintiff had placed himself in a dangerous position.

[6] ID.—EVIDENCE—DUE CARE BY PLAINTIFF—RECKLESS SPEED OF DEFENDANT.—In this action for damages for personal injuries sustained by plaintiff as the result of being struck by an automobile owned and driven by defendant, the trial court was justified in concluding from the evidence that plaintiff (who had stopped on the highway for the purpose of changing tires) had taken all precautions and at the time of the accident was taking all precautions that could have been reasonably required of him under the circumstances and that his injury was due to the carelessness and negligence of defendant in maintaining a high rate of speed while passing the person of plaintiff.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

Collins & Collins and Seth E. Tracy for Appellant.

Wm. N. Graybiel for Respondent.

PLUMMER, J.—This action was instituted by plaintiff for the purpose of recovering damages from the defendant for personal injuries sustained by the plaintiff as a result

---

5. Liability for injuring one engaged about an automobile on the highway, notes, 25 A. L. R. 134; L. R. A. 1917B, 319.

of being struck by an automobile owned and driven by the defendant.

The trial was had before the court sitting without a jury. The plaintiff was awarded judgment in the total sum of $1,050. This sum included expenses for medical attendance, plus loss of wages or compensation, and $500 on account of pain and suffering sustained by the plaintiff.

It appears that the plaintiff at the time of the injury complained of was driving a Dodge automobile southerly on the state highway between the towns of Ceres and Keyes in Stanislaus County; that at the time of the injury in question construction work was being carried on along that portion of the state highway just referred to, such work consisting of the construction of shoulders on both sides of the improved portion of said highway. These shoulders were about 18 inches wide and, according to the testimony, varied from 1½ inches to 3 inches in height above the theretofore traveled portion of the improved highway. As the plaintiff was traveling southerly it appears that the tire on the left-hand rear wheel collapsed, causing the plaintiff to stop for the purpose of changing tires. It further appears in the testimony that the shoulder on the right-hand side of plaintiff as he was traveling southerly had just been constructed, was not sufficiently hardened to permit travel thereon, and that the plaintiff placed the right wheel of his car within an inch or two of the inside line of the right shoulder or the shoulder along the westerly border of said improved highway and proceeded with the work of changing the tire on the wheel referred to; that the shoulder referred to continued a distance of a quarter or a half a mile southerly from where the plaintiff stopped, and that its condition was such as to render it improper for him to drive his car over or upon the same and, also, it further appears from the testimony that, over and beyond the left-hand side of the road, to wit, being the east shoulder, the ground was not in a condition to admit of a machine being driven over and stopped for the purpose of making repairs; that the place where the plaintiff stopped was upon an unobstructed and straight way portion, giving ample opportunity to all persons using the highway of seeing the plaintiff's car standing in the position which it

occupied and also enabling the plaintiff to see all cars approaching from either direction.

It appears that at the time of the injury sustained by the plaintiff he was occupying a crouching position close to the left rear wheel, hereinbefore referred to, engaged in the work of changing tires, and that while in this position he was struck by the defendant's automobile, which automobile was being driven by the defendant in a northerly direction along said highway.

The defendant appeals to this court from the judgment against him and for grounds of appeal alleges that the plaintiff's injury is the result of his own contributory negligence, and that no negligence was shown on the part of defendant; but, if shown, was not the sole cause of injury and would not have caused any injury to the plaintiff had the plaintiff himself not been guilty of contributory negligence at the very time the injury was inflicted. It is also contended by the plaintiff that the findings of the court are not sustained by the testimony.

The court found, among other things, that to the right of the place where the plaintiff stopped his car and along the westerly side of said highway and for a considerable distance in both directions therefrom a concrete shoulder for said highway was being constructed; that said concrete shoulder was soft and pliable; that it would have been impossible in the ordinary course of travel to drive an automobile over said shoulder without injury thereto; that it was impossible for the plaintiff to remove his car from the highway in order to make the necessary repairs for the reasons that it could not be moved to the right without interfering with the work of construction on the highway, nor to the left by reason of the condition of the ground; and that, therefore, plaintiff did not violate the statute in turning to the extreme right of the pavement close to the edge of said concrete shoulder to make the repairs to his car; that at the time of the injury the plaintiff was on the westerly side of the center of said highway; that the defendant carelessly, negligently and without due care so operated his automobile as to strike and injure the person of the plaintiff. Appellant first calls attention to subdivision w of section 20 of the Motor Vehicle Act of 1915 wherein it is provided that no person shall stop an automobile upon the

traveled portion of any highway for the purpose of making repairs unless such automobile shall be disabled to the extent that it is impossible or impracticable to remove the same therefrom until the repairs have been made, and contends that to stop an automobile as the plaintiff did in this case constitutes a misdemeanor and is such negligence *per se* as to prevent any recovery by him in this case.

[1] Whether this section, which has now been changed by an amendment, as it then stood was sufficiently certain to describe the act of the plaintiff as a misdemeanor or whether void for uncertainty need not be determined, for the simple reason that the enormous traffic on the improved highways of the state of California, and of which we think the court may properly take notice, is such as to constitute the traveled portions thereof a definite danger zone necessitating due care and caution on the part of every user thereof to insure his own personal safety. Under the motor vehicle law as applied to the circumstances under conditions requiring automobiles drivers to use the right-hand half of the highway when unobstructed there were two danger zones, to wit, one in the path of vehicles driven southerly and one in the path of vehicles driven northerly. The testimony shows that, notwithstanding the construction of the shoulders referred to, there was sufficient space for each motor vehicle on the one-half of the road required to be used by the drivers of machines traveling in either direction, and that while each machine remained on its proper side of the road there would neither be collision nor probability of collision nor possibility of collision. It further appears from the testimony that at the time of the injury complained of much use was being made of the highway referred to.

[2] It thus appears from what has been said that whether subdivision w of section 20 of the Motor Vehicle Act of 1915 is valid or invalid as a definition of an act constituting a misdemeanor, nevertheless, the plaintiff was required to use very great care in keeping his machine and person on the westerly half of the improved portion of said highway and might readily be charged with contributory negligence if he allowed any portion of his person to get beyond the center line thereof.

As there is no dispute or controversy between the appellant and respondent as to the law applicable to this case we do not deem it necessary to review the authorities cited. [3] It is well settled that if one's negligence contributes to the cause of the injury and that the injury would not have resulted had his negligence not contributed thereto he cannot recover, unless it further appears that the defendant had a last clear chance to avoid inflicting injury. The court in this case found that the plaintiff was upon the westerly half of said highway and was on the westerly side of the dividing line thereof and that the defendant carelessly, negligently and without due care drove his automobile, to wit, a Marmon car, against the person of the plaintiff and in this manner inflicted the injury complained of.

[4] As we view this case, if the testimony shows that the defendant had a last clear opportunity to avoid injuring the plaintiff and could have done so by the exercise of due care then whether the finding of the court that it was impracticable for the plaintiff to move his car to some other location for the purpose of making repairs is wholly immaterial. [5] If the plaintiff was on the westerly side of the road, as just stated, and there was sufficient room for the defendant to pass without injuring the plaintiff it was his duty to move his car sufficiently to his right-hand side of the road as to admit of such passage without injury; also, if the defendant saw the plaintiff in a position of danger at a time when his, the defendant's, car was sufficiently distant to admit of his car being stopped or brought under such reasonable control in relation to its stopping as to admit of its passage by the plaintiff without injury, then it was the duty of the defendant to either stop his car or reduce its speed to such a degree as to enable him to pass by the plaintiff without injury to him, even though the plaintiff had placed himself in a dangerous position. This reduces the question in this case purely to one of fact and not to a definition of legal principles. The testimony set out in the transcript shows that the improved portion of the highway involved, lying within the shoulders, was 15 feet 4 inches in width; that the width of the Dodge car belonging to the plaintiff was 5 feet 6 inches; that the width of the Marmon car was 5 feet 10 inches, which would leave a space of 4 feet between the two cars. That at the

time of the injury the plaintiff was in a crouching position drawn up close to the left rear wheel of his machine at work changing a tire, as hereinbefore stated; that the point or place where his body was struck by the defendant's car was from 17 to 21 inches from said wheel; that there was a distance between the Dodge car to the center of the highway of at least 26 inches and thus that defendant's car instead of being on the easterly half of said highway, which would have left plenty of space for passage, was, in truth and in fact, some 9 inches or more to the westerly side of said dividing line. The testimony to this effect, if believed by the trial court, was sufficient to establish the position of the plaintiff's car and the position of the plaintiff's body as being wholly on his right or westerly half of the traveled highway leaving the easterly half wholly unoccupied and free for the use of passing vehicles. It also appears from the plaintiff's testimony that other vehicles had passed by during the meantime, his testimony being as follows in this particular: "As I say, I figured I was on my half and edge of the highway, which left the other half of the old highway in addition to the shoulder, which seemed to me to give plenty of room. But in view of the fact that several cars had passed and had given me a reasonably wide berth, going by carefully, my danger seemed less at the time I was finally hit than it did at first."

Keeping the foregoing facts in mind let us examine the testimony relative to the conduct of the defendant. His own testimony is as follows: "Now I saw the Dodge car parked on the left hand side of the road and when we were perhaps fifteen car-lengths away—hard to determine just exactly—I saw a young man come out from the back of the Dodge car and squat down to put a tire on. Due to the fact that we had passed a great number of machines, both machines driving inside of the collar, I presumed that there was room enough for him to squat down there, but however, I blowed the horn and blowed it continuously clear up to the machine, you might say, slackening down the speed we had been traveling,—about thirty miles an hour, and I guess we slackened to around twenty, or so and we went by his car. The right hand wheels of the Marmon were against the curb or against the right hand collar, as the tracks were defined in the light sand covering. And we compared

the imprint of the McClaren cords I had on the rear tires, which tracks were in the sand, and we identified them as our tracks. As we got by the Dodge car someone said we had hit a man, or something like that. I felt no impact whatever. And we were probably three or four car-lengths beyond the Dodge car then.'' The defendant further testified that he first saw the Dodge car standing when he was about 150 yards from it; that he saw the plaintiff come around and squat down by the rear wheel when he was distant between 100 to 200 feet; that the plaintiff had been sitting in a crouching position a few seconds before the Marmon car reached the portion of the highway opposite the standing Dodge car. It further appears that the defendant did not continue to watch the position of the plaintiff after first observing the same and the explanation thereof is given as follows: ''Q. Will you explain to the court why, if you didn't see what happened until just a little bit before the accident happened, why it was you took your eyes off of him and didn't even see your car hit him when you went by him? A. Why, that is the natural thing to do, Mr. Graybiel, if you are going by a little boy or a man or anything else, after you have got by you naturally look ahead of you. If you are a careful driver you don't keep looking at him. Q. Yes, I agree with you, but I ask you why you took your eyes off him before you got by? A. That's what I say, for I had seen the man right up to the time when we had got right there and naturally supposed we were going by and there was no reason for me to keep my eyes on him. Would naturally look ahead of me more. I knew as I approached that he was bound to be very close to the edge of his car, as I passed by; and the way he was standing there, why as I recollect it, it seemed to me there was a good space of light between me and him when he was squatted down, otherwise I would not have attempted by any manner of means to go by him.''

The testimony of the witness Fletcher is to the effect that the defendant on the day of the injury made the following statement: ''I asked Mr. Auger—I saw Mr. Auger and I says, 'How did it happen?' 'Well he said, he had his car [plaintiff's car] parked along side the road changing a tire.' 'Well, I says, you must have hit him awful hard, I says, to hit him—bruise him up like that.' 'Well, he says, I was

going pretty fast; he says I was going thirty miles an hour.'
'Well, I says, why didn't you slow down when you seen
him?' 'Well, he said, I figured I had all kinds of room
and I never even thought about hitting him.' He says, 'I
never slowed down.'" The testimony of other witnesses
as to the speed of the defendant's car varied all the way
from twenty to thirty-five miles per hour. The testimony
of Mr. Hasse, a witness for the defendant, was as follows:
"Q. In your opinion how fast were you traveling at the
time you passed the Dodge? A. I don't know. I suppose
between twenty and thirty. It was a narrow highway
there. Between twenty and thirty I should judge. Q. Be-
tween twenty and thirty? A. Yes. . . . Q. Then your
statement that he was going at between twenty and thirty
miles an hour is simply made as you think of it at this
time? A. As I think of sitting in the car. I don't think
it was moving any faster. Q. Than thirty miles? A. Yes."
The testimony of the plaintiff was to the effect that the de-
fendant was driving from thirty to thirty-five miles per
hour, from all of which the court was justified in conclud-
ing that the defendant's car was traveling at a rate of speed
not far from thirty miles per hour; that the defendant saw
the plaintiff's car standing on the highway when he was
distant therefrom about 150 yards; that the defendant saw
the plaintiff pass around the rear of the Dodge car and as-
sume a squatting position at a distance of some fifteen car-
lengths, which would equal approximately 140 or 150 feet;
that even though the defendant slowed his car down to some
appreciable degree he made no effort to stop the same. It
further appears from the testimony that the 15 or 18 inch
shoulder on the easterly side of the improved highway was
dry and hard, and that its height above the theretofore
improved portion varied according to the witnesses' state-
ments from 1½ to 3 inches. The testimony as to its pos-
sible use appears in the transcript as follows: Question of
the plaintiff: "Any obstruction between your car and the
outer edge of the pavement? A. On the right hand
side? The Court: On the right hand side—the east
side. A. Oh, no, nothing at all, no nothing at all. The
Court: There was no construction work there going on
which could prevent the free passage of others, any
place? A. Nothing at all. . . . The Court: Along there

where the accident occurred could a man driving a car say in a northerly direction have crossed upon that shoulder and gone even beyond the shoulder? Was there anything to prevent that? A. No, he could have gone two or three feet further. The Court: So as to avoid any obstruction on the highway? A. Yes.'' The defendant's testimony upon the same point is as follows: ''Q. Do you mean to tell the court, in this case, that you could not drive your big Marmon car up on to that shoulder? Is that right? A. I do; not without jeopardizing the car and taking the chance of twisting my wheels and turning my car over. Q. Going at a rate as you have said, of twenty miles an hour? A. Yes. Q. That you could not drive your big heavy car weighing 3,900 pounds up on to that shoulder without jeopardizing your car and the people in it? A. Yes, sir. Weight has nothing to do with it. Q. Weight has not anything to do with it? A. No. Q. In the striking of something with the wheel, as the shoulder? A. No. Q. That is your testimony as an expert driver of a car, is it? A. Yes. Absolutely. The collar is stronger than three tons of weight—or ten tons. Q. Then will you say that a Ford, if that shoulder were two inches high, would go up on to it just as easily going twenty miles an hour as the Marmon car at the same speed? A. Oh, I believe so, yes sir. Q. In your estimation. A. Judgment, yes sir. The Court: And with as little jar? A. Yes, about the same. The Court: The jar would be the same? A. Yes. There is very little difference in that, whether the car was light or heavy. There is danger pulling the wheels over to the right and twisting it—throw the steering gear out.'' Upon this point the plaintiff testified as follows: ''Q. There was no difficulty in getting out of the main portion of the road and up on top of the shoulder? A. I customarily go up on that to pass another car. Have done so. The Court: There is no difficulty in doing so? A. No.'' The defendant's further explanation of the cause of the injury was that the plaintiff must have moved back or toward the center of the road just preceding the impact. This movement the plaintiff, however, denies. The defendant also testified that he examined the position of the tracks of his car after the impact. A witness for the plaintiff testified that no such examination was made. **[6]** Upon this state-

ment of the facts, as the defendant was not driving over thirty-five miles per hour, it is contended that he was not driving at an illegal rate of speed and hence not guilty of any negligence. Section 22 of the Motor Vehicle Act, as it then read, is as follows: "Any person operating or driving a motor or other vehicle on the public highways shall operate or drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the highway, and no person shall operate or drive a motor vehicle or other vehicle on a public highway at such rate of speed as to endanger the life or limb of any person or the safety of any property; . . . " This provision of the section is just as much a portion of the law as that which allows a speed of thirty-five miles per hour under certain specified conditions. From what has been said it is apparent that the trial court was justified in concluding that the defendant was driving at a reckless rate of speed at the time of the commission of the injury complained of; that there was no testimony showing that the plaintiff had changed his position from the time the defendant saw him crouching down near the left rear wheel of the Dodge car until some portion of the Marmon car came in contact with the plaintiff's body; that there was nothing to prevent the defendant from having driven the right-hand portion of his car on the right-hand side of the road, on to and along the 15 or 18 inch shoulder then extending along the easterly side of said highway and thus obtained a free, open and safe passageway admitting of no harm to the plaintiff; that the defendant observed and had knowledge of the position of the plaintiff, and that he took the chance of driving his car at a rapid rate' of speed past the person of the plaintiff and in so doing did not keep on the easterly or what was then to the defendant the right-hand half of the improved highway; that the defendant had ample time after observing the standing car to not only lessen the speed of his own car but to bring the momentum of the same down to such a degree that he could have passed the plaintiff safely and without doing him any injury and we also think that the circumstances as hereinbefore detailed show, that the section of the law which we have quoted required the defendant to slow his car down to such a rate of speed as to give him

64 Cal. App.—44

absolute control thereof and so prevent the injury. We also think that the section of the law just quoted justified the trial court, in view of the circumstances which we have detailed, in coming to the conclusion that the plaintiff's injury was due to the carelessness and negligence of the defendant in maintaining a high rate of speed while passing the person of the plaintiff. It may be here stated that the testimony shows that after the injury of the plaintiff the changing of the tire referred to on the Dodge car was completed without anyone suffering any injury therefrom by passing automobiles. But what care was used thereafter in making the change of the tire or by passing motorists does not appear. And while from the high rate of speed maintained by many motorists on the highway it may be common knowledge that the use or occupancy thereof by anyone, even though in broad daylight,. as was the case in this instance, is more or less hazardous, yet from the circumstances detailed we think the trial court was justified in concluding that the plaintiff had taken all precautions and was taking all the precautions that could have been reasonably required of him under the circumstances and that if the defendant had done likewise there would have been no injurious results. No complaint is made as to the amount of damages awarded the plaintiff. It follows from what has been said that the judgment of the trial court should be affirmed and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 6, 1924.