BRUENING, Appellant, v. MILLER, et al, Respondents.

(230 N. W. 754.)

(File No. 6870. Opinion filed May 10, 1930.)

H. G. *Giddings*, of Mitchell, for Appellant.

M. Q. *Sharpe* and A. C. *Miller*, both of Kennebec, for Respondents.

SHERWOOD, J. This action is based on negligence. At the close of plaintiff's case the court, on motion, dismissed the action against the defendants Frank Miller, Fritz Miller, and Richard W. Clark; also the counterclaim of said defendants against plaintiff. From these orders no appeal was taken and they are not involved in this appeal.

Thereafter the court, on motion of the other three defendants, directed a verdict in their favor upon all the issues. From a judgment on this verdict, and from an order denying a new trial, plaintiff has appealed. The only question presented is the correctness of this ruling.

In directing the verdict the trial judge said, in substance: Plaintiff's evidence shows he knew this threshing outfit was on the road in time to have stopped his car with the appliances at his command. In place of that, he chose to go around it. It is like a man passing a car ahead of him on the road knowing it is

there. It could not be said that the car passed was guilty of any negligence in being there. The better rule is that unless the negligence of defendants is the proximate cause of the injury, such negligence is not actionable.

Based on this statement, appellant argues: The trial court conceded defendants' negligence; and based its order solely on the proposition that such negligence was not the proximate cause of the injury. And further argues: If defendants were negligent, such negligence might have been the proximate cause of the injury and the case should have been submitted to the jury.

The motion for a directed verdict was based on three grounds:
1. Failure to prove defendants' negligence.
2. Plaintiff's contributory negligence.
3. That such contributory negligence was the proximate cause of the accident.

The remarks of the trial judge indicate he was considering the entire record, and what, if anything, it showed as to negligence, contributory negligence, and proximate cause of injury. They do not state the grounds nor furnish data sufficient to determine on what ground the motion was granted. Appellant is not justified in assuming that the trial court conceded defendants' negligence or that his ruling was based entirely on the proposition that defendants' negligence was not the proximate cause of the injury.

Appellant does not question the right, or duty, of the court to direct a verdict in a negligence case, where plaintiff has failed to prove defendants were negligent and that such negligence was the proximate cause of the injury. He does, however, claim that the question of contributory negligence was not raised by respondents' motion to direct the verdict. In this we think he is mistaken. Respondent's motion particularly called the trial court's attention to the testimony of the drivers of both automobiles, that each saw the threshing rig in time to stop his car before reaching it, and that "the whole proof shows that the only proximate cause of the injuries complained of is the actions of the two approaching automobiles themselves."

This clearly raised the question of contributory negligence, and it was proper to consider such negligence in the direction of the verdict. Hendrickson v. Swenson, 28 S. D. 323, 133 N. W. 250.

Appellant's complaint makes three separate charges of negligence, as follows:

(a) In parking the traction engine and separator upon the traveled portion of the highway and obstructing the highway thereby.

(b) In failing to guard the same or give notice of the presence thereof upon the highway by any lights or otherwise, or leaving a person in charge thereof.

(c) In failing to warn plaintiff, as he approached the obstruction upon the highway, of its presence upon the highway, having knowledge of plaintiff's danger and opportunity so to do.

He contends there is sufficient evidence in this record supporting these charges of negligence to take the case to the jury. This requires a brief review of the evidence, which is in substance as follows:

Herman Miller, Sr., and Carl Ganshaw, were copartners in a threshing business. Herman Miller, Jr., was employed by them in the business. About the middle of the afternoon of November 6, 1927, at the direction of Ganshaw, Herman, Jr., attached the tractor to the separator and started for the next threshing job, 7 miles distant. The route they had to travel took them south 5 miles on state trunk highway No. 41; thence west 2 miles on a section line road to their destination. When he had reached a point about 30 to 50 rods north of the corner where he was to turn off the trunk highway onto the section line road, the chain slipped off the drive wheel of the tractor and he was obliged to stop in the highway and fix it. As soon as this was fixed, he started the threshing rig and drove a short distance further, when his tractor stopped. An examination showed the float of the carburetor had stuck and let all the gasoline out. Miller fixed the float, and immediately and in company with one Frank Miller (who was not related to him and who was merely riding with him on the tractor) went to the Furchner house to get gasoline. The Furchner house was situated about 15 rods back from the north and south road on which they were traveling and about 30 rods north of the place where the tractor stood. It was the nearest farm house and was reached through a gate, hereinafter called the Furchner gate. Furchner had no gasoline but offered them his car to go to Baer's, the next nearest place. They took the car and drove about 50 rods

further to the Baer place, where they obtained the gasoline. They drove directly back to the tractor, put the gasoline in its tank, then drove the car back to the Furchner house. After leaving the car they started at once to walk back to the tractor. When they reached the highway they turned south in the direction of the tractor and walked a short distance on the gravel and then turned into the ditch on the west side of the road and proceeded on toward the tractor. While walking in the ditch and when about 10 rods from the tractor, plaintiff's car coming from the north and traveling on the side of the road nearest to them, passed by them. Both testified this car was traveling 40 to 45 miles per hour when it passed them and that it began to turn to the east about the time it passed them, and continued on and passed around the east side of the separator. When plaintiff's car had nearly reached the front end of the tractor to which the separator was attached, it came into collision with a car coming from the south. At the time of this collision plaintiff was driving a Dodge sedan. He testified that when he passed the boys, he was driving at the rate of about 25 miles per hour. Both plaintiff and Clarence Holly, who was riding with him, testified they saw the separator at tbout the same time; that Holly called plaintiff's attention to the rig then in the road ahead of them. Holly testified he saw the lights of their car glisten on the separator and spoke to plaintiff about the rig being in the highway when they were about 10 rods from the threshing outfit, and that plaintiff immediately swung his car out to the left. Plaintiff testified he and Holly saw the separator at the same time and that he saw it when he was quite a ways from it; that he was south of the Furchner gate when he saw it. He further testified as follows:

"The first I saw I couldn't tell what it was. I imagine I could have applied my brakes and stopped immediately when I saw it. I made no effort to stop my car when I saw the machine. I took my foot off the accelerator when I first saw it, but did not put on the brakes nor sound my horn as I went around the machine. When I turned to go around I found there was threshing rig in the road. I was hugging quite close to the rig. I swung out real close. I don't believe I was over a foot and a half when I swung out around it and I swung back as close as I could get.

"I saw the car approaching from the south just as we were about to hit it. I saw its lights. They were straight ahead of me.

When I saw the lights I did not have time to stop after I saw the lights. My foot was reaching for the brakes when we hit. I hugged the machine as close as I possibly could hug it. The cars came into collision opposite the tractor. When I saw the lights of the approaching car, I swung a little closer to the threshing outfit. I could not see what part of the rig I hit. It appeared to me to be the front wheel although my condition and going so fast I could not see.

"Q. You say you were going so fast you could not see what you hit? A. I mean the accident took place so fast."

Richard W. Clark, who drove the Ford car coming from the south which collided with plaintiff's car, testified: He saw the threshing rig when he was 20 rods away and it looked like a dark object. That he was driving about 25 miles an hour. That he slowed up a little bit when he saw the rig, then put his foot on the gas right when he went around the tractor, and at that time he was going 10 to 15 miles an hour. That he first saw plaintiff's lights when his (plaintiff's car) swung around the rear end of the separator.

At the time of the accident, both cars had good lights, and the lights on both cars were burning and in good condition at the time of the accident and when they were approaching the threshing outfit. Plaintiff's car was equipped with 4-wheel brakes and could have been stopped within 30 feet if it had been going 25 miles an hour and within 50 to 60 feet if it had been going 45 miles an hour.

When the threshing rig stopped because it was out of gas, it was still daylight.

Furchner testified he saw the rig coming down the road near his place when he was coming home from Stickney, and that he recognized the tractor when it was 30 rods away as being a tractor formerly owned by one Fite; that it was then coming south on the road near his gate.

Furchner further testified that he saw the rig in the road from his house when the boys were there for gasoline; and it was still light but growing darker all the time. The undisputed testimony showed that from the time the rig stopped because it was out of gas, until the car was returned to Furchner's place, was not to exceed 20 minutes, and that the Miller boys started back immediately after delivering the car to Furchner's to start the engine and

drive the rig off the highway. The evidence also showed without dispute that the accident occurred about 3 and not to exceed 5 minutes after the Miller boys had returned the car to Furchner's house, and while they were on the way back to the tractor. It is undisputed that the Miller boys saw the threshing rig plain when they were 30 rods away and coming toward it; that Clark coming from the south saw it when he was 25 or 30 rods away; and that plaintiff saw it when he was from 7 to 10 rods distant from it and could have stopped his machine after he saw the separator and before he reached it.

At the time the tractor stopped it was traveling on a grade of the state trunk highway. At the point where the tractor stopped the grade reached a height of 2½ feet. At other points on the grade it was as much as 4 feet high, but the length of the grade does not appear from the evidence.

At the time of the accident the threshing rig was standing on the extreme west side of the highway and on the top of this grade. At that point the top of the road was 24 feet wide. It was level, smooth, and graveled the entire width of the road. The country about it was level and the road in good condition.

There was about 15 or 16 feet of clear road on the east side of the tractor. At the time of the accident the blower and sides of the separator and front of the tractor were made of galvanized iron either in its natural light color or painted light. The threshing outfit was not equipped with lights and there were no lights on the tractor or separator, and no one was at the rig at the time the accident occurred, and there were no signs or barriers set up on or near it.

The condition of the cars at the tractor, after the accident occurred, was substantially as follows: The right side of plaintiff's car had struck what the witnesses called the bull wheel of the tractor. That wheel had cut into the running board of plaintiff's car on the right side from 6 to 10 inches at a point about 1 or 2 feet from the rear end of the running board. The southwest corner of the roof of plaintiff's car was torn loose, and Holly, who was riding with plaintiff, was thrown partly through the top of the car. A dog riding in the back seat of plaintiff's car was killed, plaintiff himself was very badly injured, and the other occupants of the car more or less hurt. The right front fender of plaintiff's car

and the right front light were intact and uninjured. The front axle of his car was pushed back under the machine. Both front springs were broken and the left front wheel forced back under the driver's seat. The left front light was gone and the left front part of the car wrecked.

The condition of the Ford car coming from the south was as follows: It was in the ditch on the east side of the road about 15 feet northeast of plaintiff's car and facing southwest. The right front light was still burning and shining upon the bull wheel of the tractor. The left front side of the car was badly wrecked and the left front light gone. The occupants of this car had been scattered by the collision, but appear not to have been seriously injured.

 Plaintiff testified he was driving about 25 miles per hour when he first saw the threshing outfit ahead of him; that he removed his foot from the accelerator but did not apply the brakes. Assuming this to be true, as we shall, in considering the ruling of the court, there is no disputed question of fact in the record. And we have only to apply the law to the undisputed facts before us.

We first consider acts of negligence charged against defendants. Under (a), did defendants park their engine and separator on the traveled portion of the highway, and thereby obstruct the highway?

 It seems to be conceded by both parties (and we shall assume it to be the law of this state) that defendants had the same right to use the highway to transport their threshing rig to the next job that any other motor vehicle had. It follows that they had the right to occupy the necessary space required by a rig of that size while traveling along the highway. They also had the same right to the use of the highway in case of accident which any other motor vehicle lawfully upon the highway possessed.

Defendant's tractor stopped on the highway because of an accident. He at once repaired the float in the carburetor and set out to obtain gasoline with which to replace its motor power. It is not claimed that the threshing rig could have been moved from the highway in any other manner more quickly than that adopted by defendant, or that defendant consumed any unnecessary or unreasonable time either in repairing the carburetor, obtaining the

gasoline, or returning to the rig after the car was returned to Fuchner's.

The rule applicable in case of accident to a motor vehicle on the road is stated in Blashfield's Cyclopedia of Automobile Laws, vol. 1, p. 656, § 4, as follows: "The exigencies of automobile traffic make constant demands upon operators of motor vehicles to stop their cars either on the highway or at the side of the road to make repairs, and a driver or owner of such vehicle has a right to stop his machine in the highway for the purpose of making repairs, adjusting the machinery of his car, or to do whatever is necessary to be done about the car to increase its service for the purpose of travel." Citing Graybiel v. Auger, 64 Cal. App. 679, 222 P. 635; Reynolds v. Murphy, 241 Mass. 225, 135 N. E. 116; Deitchler v. Ball, 99 Wash. 483, 170 P. 123; Berry on Automobiles, Sixth Ed., vol. 1, p. 226.

If respondent had the right to stop his tractor to do whatever was necessary for the purpose of travel, he had the right to leave the rig on the highway a reasonable time for that purpose.

In this case, when the accident occurred the tractor and separator were on the west side of the grade facing south. There was 16 feet of clear, smooth graveled road on the east side of them open for traffic. The vision was unobstructed and the road straight, smooth and 24 feet wide for a long distance to the north and south. It was not dark when the accident occurred, and it was not negligence for defendants to stop and leave the threshing rig in the highway and go to the nearest farm house for gasoline.

Leaving the rig upon the highway under these circumstances was not "parking" it in the sense in which that word is properly used. Kastler v. Tures, 191 Wis. 120, 210 N. W. 415. Long v. Steffen, 194 Wis 179, 215 N. W. 892, 61 A. L. R. 1155. And it was not obstructing the highway in the sense in which that phrase is used in section 4309, Rev. Code 1919. Deitchler v. Ball, supra; Graybiel v. Auger, supra.

Our attention is called to section 8656, Rev. Code 1919, which provides in part as follows: "A rate of speed in excess of twenty-five miles an hour shall be presumptive evidence of driving at a rate of speed which is not careful and prudent."

This provision is a limitation; not a license to drive 25 miles per hour at all times and under all circumstances. The same sec-

tion of the statute provides as follows: "Every person operating a motor vehicle on any public highway of this state shall drive the same in a careful and prudent manner, and at a rate of speed so as not to endanger the property of another, or the life or limb of any person." This, we think, is the rule applicable to the case at bar. We need not pursue the question of defendants' negligence, if any, very much further. At the time this accident occurred, chapter 251 of the Laws of 1929 had not been enacted and the statute did not require tractors to be equipped with lights as it now does. Page 312, § 50, Session Laws 1929.

This record does not show that defendants violated any statutory provision either in driving or leaving this rig on the highway.

We do not think the failure to obtain and place lights upon the threshing rig is material in this case, because the record affirmatively shows that each automobile driver when approaching the rig was able to see it and did see it in time to stop his car before he reached the rig. For the same reason it is not necessary to discuss the question of failure to put up barriers or signs or the failure of defendants to notify plaintiff of the obstruction in the road which he could see and was already turning out for when his car drove by defendants. The accident was not caused because appellant did not see the threshing rig in time. It is admitted he saw it in time to stop. He testifies he knew it was a threshing rig when he turned out to go around it. We think the defendant acted as an ordinarily prudent man would have acted under like circumstances and there was no question of negligence for the jury. But even if there was slight negligence on the part of defendant, we think the verdict was properly directed because of the contributory negligence of the appellant.

■■ It was the duty of appellant in approaching and attempting to pass around a known obstruction in the highway to have his car in such control as not to collide with the vehicle he was attempting to pass, or the one he might meet. Deitchler v. Ball, supra.

Blashfield's Cyclopedia of Automobile Law, vol. 1, p. 438, § 10, says:

"The law of the road relating to the passing by one vehicle of another does not relieve the driver of the former from the duty of using reasonable care to avoid other vehicles, including

those going in the opposite direction, and before swinging to the left, he ought to seek to ascertain whether anything is approaching from the opposite direction, having in mind his duty to go to the right of any such meeting vehicle.

"If the view is obscured the motorist must anticipate in determining whether it is prudent to pass another vehicle that vehicles may be coming from the opposite direction, and that they will be expected to keep on the same side of the road on which he is traveling in passing the vehicle in front of him." Blashfield's Cyclopedia of Automobile Law, vol. 1, pp. 434, 435, § 9; Berry on Automobiles (6th Ed.) vol. 1, p. 225, § 254.

These rules apply also to standing vehicles. Altenkirch v. Nat. Biscuit Co., 127 App. Div. 307, 111 N. Y. S. 286.

■■■ Knowing there was an obstruction in the traveled portion of the highway directly in front of him, appellant attempted to pass it at 25 miles per hour without setting his brakes or reducing his speed. When he reached the separator he knew he must pass around it on the left side. He also knew a car might be coming from the opposite direction and, if it did, he must pass between it and the threshing rig. Yet he swung out around the separator without either sounding his horn or reducing the speed of his car so he could stop if a car appeared in front of him.

We hold both of these acts were contributory negligence in law which prevent appellant's recovery from respondent.

■■■ In this case the most that can be said concerning the threshing rig in the highway is that it did nothing more than furnish a condition by which the injury by the subsequent independent act of a third person occurred. In such a case the existence of the condition is not the proximate cause of the injury. Hendrickson v. Swenson, 28 S. D. 323, 133 N. W. 250. Citing 21 A. & E. of Law 494. And see Curran v. Chi. & W. I. R. Co., 289 Ill. 111, 124 N. E. 330; Hartnett v. Boston Store, 265 Ill. 331, 106 N. E. 837, L. R. A. 1915C, 460; Seith v. Commonwealth Electric Co., 241 Ill. 252, 89 N. E. 425, 24 L. R. A. (N. S.), 978, 132 Am. St. Rep. 204; Jenkins v. La Salle County Carbon Coal Co., 264 Ill. 238, 106 N. E. 186.

■■■ In Hendrickson v. Swenson, this court held that where the facts were admitted, the court might as a matter of law find

there was such contributory negligence on the part of a plaintiff as to defeat a recovery, citing many cases.

Appellant cites a large number of cases in support of his propositions, practically all of which were decided long before automobiles came into general use. We have read all these cases, but they are not applicable to the question presented here. The later cases cited have been read, but they are not in point upon the facts in this case.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed.

BROWN, P. J., and POLLEY, J., concur.

CAMPBELL and BURCH, JJ., concur in the result.