[*Civ. No. 3166. Third Appellate District.—December 17, 1926.*]

## C. H. DAM, Appellant, v. LON BOND, Respondent.

[1] TRIAL — ARGUMENT IN CIVIL CASE WITHOUT JURY TRIAL — DISCRETION.—The question of argument in a civil case tried by the court without a jury is a matter of discretion in the trial court and not of absolute right.

[2] ID. — LIMITATION OF ARGUMENT—DISCRETION—APPEAL.—The right of the trial court to limit argument in cases where the court is sitting without a jury must be recognized as one clearly within the power of the trial court, in order that the business coming before it may be properly transacted; and a very strong case showing abuse of discretion, where the matter of argument is one properly of discretion, must be made out before an appellate court would be warranted in setting aside a judgment on the ground that the trial court limited the argument to certain questions only.

[3] NEGLIGENCE — AUTOMOBILE COLLISION—LIMITATION OF ARGUMENT—DISCRETION—RECORD.—In this action for personal injuries and damage to property resulting from a collision between plaintiff's automobile and an automobile owned by defendant, where plaintiff claimed irregularity on the ground that his argument was limited to the question of whether or not the operator of defendant's automobile was an independent contractor, and that plaintiff was not afforded an opportunity to argue the question of such operator's negligence, the record does not present any abuse of discretion on the part of the trial court justifying an appellate court to order a reversal of the judgment in favor of defendant.

[4] ID.—CONTRIBUTORY NEGLIGENCE — FINDINGS — EVIDENCE. — In such action, the evidence was sufficient to support the findings that plaintiff was operating his automobile in a reckless manner and in disregard of the person and property of others, in violation

---

1.  See 24 Cal. Jur. 741.
2.  *See* 24 Cal. Jur. 742; 2 R. C. L. 406.

of section 22a of the Motor Vehicle Act of 1919, and hence was guilty of contributory negligence.

[5] ID.—SECTION 22A, MOTOR VEHICLE ACT—CONSTRUCTION OF.—Under section 22a of the Motor Vehicle Act, it is not the absolute speed at which the automobile is being driven that determines whether it is or is not being propelled at a reckless rate, but the conditions and circumstances of the highway at the instant of time must be taken into consideration, and if these conditions are such that the safety of persons and property require a much lesser rate of speed, it is the duty of the driver of the motor vehicle to slow down the speed of his car.

(1) 38 Cyc., p. 1934, n. 48.   (2) 4 C. J., p. 827, n. 8; 38 Cyc., p. 1934, n. 48.   (3) 4 C. J., p. 827, n. 8.   (4) 4 C. J., p. 844, n. 66, p. 878, n. 82; 42 C. J., p. 1238, n. 49.   (5) 42 C. J., p., 925, n. 69, 72, p. 1235, n. 28.

APPEAL from a judgment of the Superior Court of Yuba County. Claude F. Purkitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. H. Dam for Appellant.

Richard Belcher and Bond & Deirup for Respondent.

PLUMMER, J.—The complaint sets forth, in substance, that on or about the twenty-fourth day of January, 1922, the plaintiff was driving an automobile, to wit, a Dodge Brothers' commercial car, in a southerly direction along a public highway in the county of Yuba, that while plaintiff was then and there proceeding along by the side of several horse-drawn vehicles traveling in an opposite direction to plaintiff and while plaintiff was keeping on the westerly half of said highway, the defendant's car, driven by one J. W. Benner as the defendant's agent, was proceeding in an opposite direction to plaintiff along said highway, and then and there negligently attempted to overtake and pass said horse-drawn vehicles to his left or westerly side thereof, without having a clear and unobstructed passage ahead of said defendant for 100 yards, or for any distance at all; that plaintiff, seeing such attempt on the part of said Benner, then and there turned his machine to the right in order to get out of said defendant's way;

that said Benner then and there was so negligently, carelessly, recklessly, and unlawfully driving and operating the defendant's automobile, to wit, a Buick car, that it ran into and collided with plaintiff's car, injuring the plaintiff and damaging his said car, all to the damage of plaintiff in the sum of $5,350.

The answer of the defendant denies negligence on the part of the driver of defendant's car, denies that Benner was the agent of the defendant, and alleges that Benner was an independent contractor, and, also, that the plaintiff was guilty of contributory negligence and that the collision was the result solely of negligence on the part of the plaintiff.

The trial court found that the collision was due to the fact that the plaintiff was driving his automobile at an unlawful rate of speed and at a speed in excess of 30 miles per hour; that at the time the said J. W. Benner attempted to pass said cavalcade of horses, wagons, and a truck, not mentioned in plaintiff's complaint, following the same, the highway to the left was unobstructed for the required distance; that for some period of time before meeting the cavalcade of horses and wagons, the plaintiff had been traveling on the easterly or left-hand side of the highway and continued along said easterly or left-hand side of the highway until within a short distance (estimated by some witnesses from 30 to 50 feet) before turning to the westerly or right-hand side of said highway, and by reason thereof plaintiff's automobile was not visible to anyone attempting to pass said cavalcade traveling in the same direction therewith and turning to the left in order to proceed along past said cavalcade on the westerly half of the paved highway.

The trial court further found that the plaintiff did not slacken the speed of his automobile until the time of the collision and that plaintiff's automobile was equipped with defective brakes. The trial court also found that Benner was an independent contractor.

The cavalcade herein referred to consisted first of a four-horse team drawing a cook wagon, a spring wagon, and a cart; second, a two-horse team drawing a wagon to which two cows were tied in the rear and were being led, and, third, an automobile truck which at the time was following said cavalcade at a distance of about 50 feet in the rear of the horse-drawn vehicle to which the two cows were tied.

The action was tried by the court without a jury and judgment passed for the defendant as heretofore stated. The trial was concluded on the ninth day of March, 1923, and the opinion of the court directing findings to be prepared in favor of the defendant was filed on the twenty-eighth day of July, 1923. A motion for a new trial was made on account of an alleged irregularity of the trial court during the argument of the cause. Affidavits in support of the alleged irregularity were filed and presented to the court upon plaintiff's motion for a new trial, plaintiff's motion on said ground being denied.

The plaintiff set forth in his affidavit relating to the irregularity of the trial court that, at the close of the evidence, the court stated substantially as follows: "The only question upon which I care to hear argument is whether the defendant is liable for the acts of an independent contractor and that is a matter of law." That after the court had so stated counsel for appellant proceeded in an argument for over one hour to review the California decisions in support of appellant's position that Benner was a servant of the defendant and not an independent contractor; that affiant understood the statement of the court to mean that on the question of Benner's negligence, the mind of the court was made up in plaintiff's favor and that defendant could escape liability only if Benner was an independent contractor, and accordingly did not argue the question of Benner's negligence; that affiant was prepared to argue the question of Benner's negligence at great length, and in view of what affiant considers to be the overwhelming weight of the evidence, that counsel could have convinced the court beyond a shadow of a doubt that plaintiff's injuries were due to Benner's negligence; that after the counsel for the plaintiff had concluded his argument, counsel for the defendant argued the question of negligence for about forty-five minutes of time; that counsel for plaintiff then followed the argument of counsel for the defendant and had made but a very short argument when the court interrupted counsel for the plaintiff and stated that it had promised other counsel to hear a certain cause and that the hour designated by the court for the hearing thereof had already passed; that counsel for the plaintiff was forced to close his argument, although he had hardly "scratched the surface of

the argument counsel was prepared to make on the question of negligence.''

The affidavit filed on behalf of the defendant sets forth, in substance, that defendant has no recollection of any such statement being made by the court; that counsel for the plaintiff did argue the questions of fact at length concerning Benner's negligence and the negligence of the plaintiff and did discuss the credibility of the witnesses and did comment at length upon the contention that the witnesses for the defendant were not entitled to credit; that the testimony of some of the witnesses was unsatisfactory and contradictory; that counsel for the plaintiff did maintain that the witnesses for the plaintiff were entitled to full credit; that counsel for the plaintiff referred to the standing of the witnesses and referred to one or more of them as being sons of pioneers. At the conclusion of the argument the court directed the testimony of two witnesses to be written up: The testimony of the plaintiff and the testimony of the defendant.

Upon this appeal it is argued that the alleged irregularity of the court prevented the plaintiff from having a fair trial; that it was an abuse of discretion on the part of the trial court and prevented the plaintiff from having a fair trial, and that the action of the court constituted a surprise which ordinary prudence could not have guarded against. A further ground of appeal is based upon the contention that the findings of the trial court are not supported by the testimony.

An examination of the various sections contained in chapter 5 of article III of the Code of Civil Procedure, beginning with section 631 thereof, relative to trials by the court sitting without a jury, discloses that the code is silent as to any right of counsel to argue causes tried without a jury. The subdivisions of section 607 of the Code of Civil Procedure refer solely to causes tried before a jury where the right and the opportunity of arguments are recognized and provided for as an aid to jurors in reaching a conclusion. By omitting such provisions when outlining the procedure for trials before the court alone, the only inference that can be drawn therefrom is that the question of argument is left to the judicial discretion of the trial court. [1] In other words, it is a matter of discretion and not of absolute

right, as stated in the case of *Center* v. *Kelton,* 20 Cal. App. 611 [129 Pac. 960]. In the case at bar the court did not refuse to hear any argument. It only sought to limit the argument of counsel. The affidavits to which we have referred presented to the court for decision the question as to what matters were argued before it and it does not lie within the power of the appellate court, simply upon the face of the affidavits, to adjudge that the conclusion of the trial court was erroneous upon the question of what was argued. From the affidavits filed on behalf of the plaintiff and the defendant it appears that the cause was argued for approximately two hours. Whether the cause was argued upon questions which the trial court desired to hear is not a matter which we can pass upon, as presented to us upon this appeal. [2] The right of the trial court to limit argument in cases where the court is sitting without a jury must be recognized as one clearly within the power of the trial court, in order that the business coming before it may be properly transacted. A very strong case showing abuse of discretion, where the matter of argument is one properly of discretion, must be made out before an appellate court would be warranted in setting aside a judgment on any such ground. Such abuse of discretion is not made out by conflicting affidavits as to what questions were actually argued, or showing without contradiction that approximately two hours of the time of the court were consumed in the argument of the cause represented by the respectiv counsel. It may be observed, however, that it does appear from the affidavit that counsel for plaintiff consumed a longer period of time in his argument, irrespective of what questions he may have argued. In passing upon these questions, we express no opinion as to whether the trial court did or did not allow counsel for the plaintiff all the time desired by him to present all the points involved in the case, or all the reasons that counsel for the plaintiff wished to urge upon the trial court, impelling a decision in favor of the plaintiff. [3] All we decide is that the record does not present any such abuse of discretion on the part of the trial court justifying an appellate court to order a reversal of the judgment. This being a case tried before a court, where an argument is a matter of discretion and not a matter of right, it is not necessary to review the cases having to do with irregularity

in the trial court in limiting or denying arguments in trials had before juries.

[4] Are the findings supported by the evidence? This question again involves not the weight of the evidence, not whether the evidence preponderates in favor of the plaintiff or in favor of the defendant, but whether there is substantial evidence in the record supporting the findings of the court. The testimony of the plaintiff was to the effect that as he was driving down the highway he was running at about 25 miles an hour; that at a point where the road curves slightly he saw an automobile following the caravan to which we have referred; that he continued to drive about the middle of the road a little to the left of the center until he got down to about 60 feet of the first team. On cross-examination he admitted having testified that as he approached the horses he was driving on the left side, had been driving on the left side for probably 300 yards, and that he drove on the left side until he came within 30 to 50 feet of the horses of the first team before he turned to the right; that when plaintiff was about 100 yards up the road Benner was about the same distance behind the last vehicle in the caravan; that while driving down the left side of the center of the highway he did not slow up; that the brakes on his car were a little weak; that when he saw the cook house in the caravan he was from 100 to 150 feet away, but did not go to the right side of the highway; that he did not slow down to 20 miles an hour; that he drove down directly toward the cook house until he came within 30 to 50 feet of the front of it and then swung to the right; that unless one were a little over the center of the road one could not see what was coming from the rear of the cook house; that when he swung around the cook house he was running at a rate of speed of 20 miles or better per hour; that a fraction after he swung out around the cook house Benner came out on the west side of the highway; that he put his foot on the brake just a little; that the foot-brake was very weak; that he would not say that he did put on the brakes; that he did not use the emergency brakes; that he traveled a fraction slower as he was passing along by the horses and wagons. The testimony of the plaintiff also shows the following question and answer: "Q. You did not take any precautions your-

self to avoid the collision other than swinging out into the dirt road? A. I don't know as I did.''

The testimony of the witness A. Schorth, a driver of one of the teams, is to the effect that the plaintiff was traveling at about 36 to 37 miles per hour; that he did not think the plaintiff slowed up any.

The testimony of the witness Hurdle is to the effect that it looked to him as though the plaintiff was traveling between 35 and 40 miles per hour; that practically the same speed was maintained all the time by the plaintiff. The witness Hurdle was driving the truck heretofore mentioned. His testimony is to the effect that Benner had turned out and passed his truck and was in the act of passing the rear horse-drawn vehicle, when the plaintiff swung into view at the head of the cavalcade, as he was coming down the highway from the north. The driver of the four-horse team drawing the cook wagon testified that he saw the plaintiff coming at a distance of 400 yards up the highway; that the plaintiff was circling back and forth on the highway; that he went to the left side of it; that he continued on the left side close to the head team; that he turned his leaders to the right over on the dirt, as the plaintiff was coming too close; that he had a colt in the lead team and was afraid it would be scared; that when the plaintiff passed the lead team he was about four feet distant; he just shaved the cook house as he passed; that the plaintiff was coming very fast; as compared to the ordinary speed of automobiles on the public highway he thought he was going faster.

There was some testimony to the effect that when the plaintiff swung out past the cook house, he turned slightly to the left, and some testimony by one of the team drivers that the plaintiff and Benner were both making some ''awful movements.''

There is also evidence in the transcript showing that Benner was at fault, but need not be set forth herein, as so doing would only show the conflict of the testimony.

At the time of the collision involved in this case, the Motor Vehicle Act, approved May 2, 1919, was in effect. Subdivision a, section 20, of that act required the driver or operator of any vehicle on the public highway to travel on the right-hand side of such highway, unless the road ahead on the left-hand side was clear and unobstructed for at least

100 yards ahead, unless it was impracticable to drive on said right-hand side of the highway. Subdivision a of section 22 of the act approved May 2, 1919, limited the speed of motor vehicles to 30 miles an hour, except in the daytime when the road was clear and unobstructed for a distance of 400 feet. Subdivision a of section 22 of said act contained also the following provision: "Any person operating or driving a motor or other vehicle on the public highways shall operate or drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the highway, and no person shall operate or drive a motor vehicle or other vehicle on a public highway at such rate of speed as to endanger the life or limb of any person or the safety of any property."

This court, in the case of *Graybiel* v. *Auger*, 64 Cal. App. 679 [222 Pac. 635], said: "This provision of the section is just as much a portion of the law as that which allows a speed of thirty-five miles per hour under certain specified conditions." We may add that where the testimony shows that this provision of the law is not being complied with, the trial court is justified in coming to the conclusion that the operator of a motor vehicle is driving at a reckless rate of speed, even though he is not exceeding the speed limit of 35 miles per hour allowed upon an unobstructed highway. [5] In other words, it is not the absolute speed at which an automobile is being driven that determines whether it is or is not being propelled at a reckless rate, but the conditions and circumstances of the highway at the instant of time must be taken into consideration, and if these conditions are such that the safety of persons and property require a much lesser rate of speed, it is the duty of the driver of the motor vehicle to slow down the speed of his car.

The testimony which we have set forth, if believed by the trial court, is sufficient to show that the plaintiff drove on the left-hand side of the highway until within a very short distance of the head team of the cavalcade and then ran along the side thereof at a rate of speed in excess of 30 miles an hour and passed the cook wagon, where his view of the highway was limited to a very few feet. Under such circumstances, it is evident that a just regard for the safety of the person and property of others demanded a much

slackened speed of the plaintiff's car, and this, in view of the distance which an automobile travels in a second of time. When traveling only 20 miles an hour, it is estimated that a car will travel 29⅓ feet per second, so that if the speed be increased to 30 miles an hour, the automobile would cover practically 45 feet in the same length of time. Applying this to the testimony of the plaintiff when driving around the cook house drawn by the four-horse team, it would appear, if the court accepted the testimony which we have herein set out, that the plaintiff was violating the provisions of subdivision a of section 22 of the Motor Vehicle Act, and was propelling his machine in a reckless manner and in disregard of the person and property of others. Hence, if the collision occurred under such circumstances, the court was justified in concluding that plaintiff's contributory negligence barred recovery, as the approximate cause of the collision.

Our attention has not been called to any testimony which would lead to the view that the conclusion of the trial court that Benner did not have a last clear chance to avoid the collision is unsupported. Whether Benner was guilty of negligence is really immaterial and does not need to be considered by this court, for the reason that the testimony which we have set forth, if believed by the trial court, is sufficient to support the conclusion of the trial court that the plaintiff was guilty of contributory negligence, nor do we need to consider the question as to whether Benner was or was not the agent of the defendant Bond. Appellant, in his brief, has called attention to some alleged errors by the trial court in the admission and exclusion of testimony, which we have examined, but none of them are of sufficient merit to in anywise affect the ultimate decision in this cause. The errors assigned not being deemed sufficient to justify a reversal herein, the judgment of the trial court is hereby affirmed.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1927.