[Civ. No. 3950. Third Appellate District.—January 16, 1930.]

R. F. HAVENS, Respondent, v. A. LOEBEL, Appellant.

J. Hampton Hoge, Len H. Honey and A. Dal. Thomson, for Appellant.

Arthur Coats and Alvin Weis for Respondent.

PLUMMER, J.—This action was instituted by the plaintiff to recover damages from the defendant for and on account of the death of Gordon Leroy Havens, a minor son of the plaintiff, alleged to have been caused by the negligent operation of an automobile by the defendant.

The record shows that on or about the twentieth day of March, 1927, the plaintiff, with whom his minor son was riding, was driving westerly on a certain paved highway known as and called the Tahoe-Ukiah Highway. At a point about three and one-half miles west of Yuba City this highway is intersected by a public highway known as and called the Hooper Road. While the Hooper Road intersects the Tahoe-Ukiah Highway, it does not cross the same. The defendant, at the same period of time, was driving southerly on the Hooper Road. The record further shows that the board of supervisors of Sutter County had, by ordinance, declared the Tahoe-Ukiah Highway a boulevard, and had placed a stop-signal on the Hooper Road at or near the point where it connects with the Tahoe-Ukiah Highway. In the collision which occurred between the car driven by the plaintiff and the one driven by the defendant, Gordon Leroy Havens, who at the time was of the age of about six years, was so injured that he died shortly thereafter. The traveled portion of the Tahoe-Ukiah Highway was paved to a width of about fifteen feet. The record shows that it was the car driven by the plaintiff which collided with the one driven by the defendant, the plaintiff's car striking the defendant's car on the left-hand side to the rear of the front seat. The testimony also shows that it was the left

or driver's side of the plaintiff's car which was most injured by the impact. The force of the plaintiff's car in striking the defendant's machine forced the defendant's machine partly around and off the paved portion of the Tahoe-Ukiah Highway so that its position was to the south thereof and facing approximately due east. The car driven by the plaintiff, after the collision, was standing almost horizontally across the pavement. There is testimony to the effect that defendant did not bring his car to a standstill in accordance with the stop-signal on the Hooper Road, but proceeded past the same and on to the Tahoe-Ukiah Highway, with the intent of turning eastward thereon. The plaintiff's testimony establishes that he was driving westerly at a speed of approximately thirty miles an hour, that he was traveling at such speed for some distance before reaching the intersection of the Hooper Road, and that he continued on and across a portion of the intersection, without slackening the speed of his car, until he was within four or five feet of the automobile driven by the defendant. There is also testimony to the effect that on the north side of the Tahoe-Ukiah Highway there was, on the twentieth day of March, 1927, an olive orchard, and that this olive orchard extended up to the Hooper Road. The testimony of some of the witnesses was to the effect that the trees of the olive orchard more or less interrupted the vision of an approaching automobile on the Hooper Road, the plaintiff, however, testifying that he could see between the trees, and that an automobile driving southerly on the Hooper Road would not be at any time entirely out of one's vision when traveling westward on the Tahoe-Ukiah Highway. The collision occurred about 6 o'clock in the evening, and at a time when one traveling westward had to protect himself from the rays of the sun. This fact is clearly established by the testimony of the different witnesses. The testimony of the plaintiff, which we will hereafter set forth, shows beyond controversy that from the point where the collision took place on the paved portion of the Tahoe-Ukiah Highway northward into the Hooper Road, there is an open space of at least fifty feet where a car approaching from the north on the latter road was ordinarily plainly and clearly visible. The testimony of the plaintiff likewise establishes that for the last one hundred feet before reaching the intersection

of the Hooper Road and Tahoe-Ukiah Highways the plaintiff was traveling with his eyes blinded by the sunlight so that he could not or did not see whether there was any car approaching from the Hooper Road or whether there was any obstruction whatever to his progress as he was driving westward. The testimony of the plaintiff further shows that at no time while his eyes were blinded by the sunlight did he slacken the speed of his car, but proceeded at the speed of thirty miles per hour. Upon the conclusion of the plaintiff's testimony the defendant moved for a nonsuit on the ground that the plaintiff's own testimony established his contributory negligence. This motion was denied, and at the conclusion of the case judgment went for the plaintiff, from which the defendant appeals. ▆ Upon this appeal it is contended that the plaintiff's own testimony establishes his contributory negligence up to the time of the collision; that it was his car that collided with the defendant's car; and, also, that there is no testimony establishing any negligence on the part of the defendant. Without quoting any of the testimony relating to the alleged negligence of the defendant, we will simply content ourselves with saying that there is sufficient testimony in the record upon which negligence upon his part may be predicated. What we have to say deals particularly with the alleged contributory negligence of the plaintiff. After testifying that he was familiar with the highways referred to, and had traveled the same a number of times, and was, at the time of the collision, driving at a speed of around thirty miles an hour, the following questions and answers appear in the transcript: "Q. And you could not see very well on account of the sun, could you? A. It was just about six o'clock and the sun was shining on the highway and in my eyes to a certain extent. Q. And wasn't it shining in your eyes to such an extent that it interfered with your vision of the road and the side road? A. It especially interfered with my vision on the side road at a certain point when you are right close to it—right close to an object and the sun is shining towards you there is a glare and a dark spot on the right-hand side of your windshield and that is why I watched that space there and that is how the machine got on me, it came through that dark space at the vital time." The witness was then asked the following questions and gave the

following answers: "Q. I will ask you if, when you testified before the coroner's inquest, you were asked this question, and if you gave this answer: 'Question: How fast were you driving? Answer: 'I was driving thirty miles an hour; I looked at the speedometer just a few seconds before that; I could not have driven any faster and stayed on the pavement facing the sun; I never drive any faster under those conditions.'" Being asked if he gave that testimony, he stated that he did. Further on the witness testified that he gave the following testimony before the coroner's inquest: "Q. The sun was in your eyes? A. It was just a little after six o'clock. Q. The sun obstructed your view? A. There was an awful glare and the radiator—I have practically a new machine and the radiator and the hood are rather high and there was a glare both from that and the highway. Q. The sun kind of bothered you? A. It blinded me to the extent I kind of had my hand up." Further: "Q. Now, Mr. Havens, the fact is that you did not see the Loebel car until you were just in the act of striking it? A. Just as they came out on to the pavement, just as they started out on the pavement." And being asked if he gave the following testimony before the coroner's inquest, plaintiff testified that he did: "Q. You saw nothing of this car until it loomed up in front of you? A. I saw nothing, absolutely nothing until it was right in front of me like it was placed there by magic. Q. How far were you from the car when you first saw it? A. I was right on top of it." And further: "Q. Where was your car when you first saw the Loebel car, how far back from the point X? A. Five or six feet." Without quoting any further testimony, it is sufficient to repeat what we have stated, that the testimony of the plaintiff shows an open space from the Tahoe-Ukiah Highway extending northerly on the Hooper Road for at least fifty feet, and that this open space is plainly visible, under ordinary conditions, for at least one hundred feet to the eastward on the Tahoe-Ukiah Highway, from its intersection with the Hooper Road, to one traveling westward on the paved portion of the Tahoe-Ukiah Highway, and that during the time the plaintiff traversed that distance on the Tahoe-Ukiah Highway, at the rate of thirty miles per hour, his vision was so obscured by the sunlight that he could not and did not see the approach of the defendant's car.

It may, however, be further stated that the testimony of the plaintiff referred to what he called the "dark spot" on his windshield caused by the reflection of the sun, so that he could not see any car approaching for the distance mentioned on the Hooper Road. Was the plaintiff, under the circumstances set forth, guilty of contributory negligence? In other words, was he negligently driving his own car, at the time it collided with, or ran into the defendant's automobile? At the time of the collision in question the California Vehicle Act, as amended in 1925 [Stats. 1925, p. 398], was in force. Section 113 of that act reads: "Any person driving a vehicle on public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person." Section 121 of the same act reads: "Any person who knowingly and wilfully drives any vehicle upon a public highway either without due caution and circumspection, or in such manner as to endanger the life, limb or property of any person, shall be guilty of reckless driving," etc. Subdivision 2 of section 113 of the California Vehicle Act limits the speed of one driving or traversing an intersection of highways when the driver's view is obstructed, to fifteen miles an hour. It further specifies that "a driver's view shall be deemed to be obstructed when, at any time during the last one hundred feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection, for a distance of two hundred feet from such intersection." Section 131 of the same act, at the time of the collision in question, gave the right of way as follows: "When two vehicles approach an intersection of a public highway at approximately the same time, the vehicle approaching from the right shall have the right of way, provided such vehicle is traveling at a lawful speed." Unless controlled by ordinances relating to the stop-signal, under the conditions presented in this case the defendant had the right of way. But if he had brought his car to a standstill at the stop-signal, as claimed by him, he had then the duty of determining whether he could

safely proceed out and upon the Tahoe-Ukiah Highway, and that would be a question for the jury, as to whether he was or was not negligent in so doing, which question, however, we do not need to consider.

■ Like most cases which we have examined having to do with the speed limit at intersections where the driver's view is interrupted, dealing with objects such as buildings or trees, we do not see why, in principle, it does not apply to any driver who does not have, in the language of the section, a clear and uninterrupted view of such intersection from any cause whatsoever, and that upon his clear and uninterrupted view being taken away, it is the duty of a driver to reduce his speed to fifteen miles per hour. We do not see why, if a driver is blinded by the sun so that he has no clear and uninterrupted view, he should not be held to the same speed as though his view were uninterrupted by either trees or buildings. The danger is just as great in one instance as in the other, and in addition to the other sections requiring an automobile driver to so limit his speed as not to endanger person or property, we think the speed limit permissible under such conditions when one does not have a clear and uninterrupted view of an intersecting highway, is as provided by the section. Whatever the cause, the sections to which we have referred are applicable and the speed must be reduced.

In the case of *Dam* v. *Bond*, 80 Cal. App. 342 [251 Pac. 818, 822], this court, in its opinion, referring to the case of *Graybiel* v. *Auger*, 64 Cal. App. 679 [222 Pac. 635], considering the rate of speed permitted by the California Vehicle Act, said: "It is not the absolute speed at which an automobile is being driven that determines whether it is or is not being propelled at a reckless rate, but the conditions and circumstances of the highway at the instant of time must be taken into consideration, and if these conditions are such that the safety of persons and property require a lesser rate of speed, it is the duty of the driver of the motor vehicle to slow down the speed of his car." A hearing of that case was denied by the Supreme Court. It was contended in the case of *Dam* v. *Bond, supra,* that the automobile driver charged with negligence, was not driving beyond the speed limit of thirty-five miles per hour, and what was said, as above quoted, was in relation to the speed

limit of thirty-five miles per hour then allowed upon an unobstructed highway.

In *Hammond* v. *Morrison,* 90 N. J. L. 15 [100 Atl. 154], the Supreme Court of New Jersey, in considering a case where the automobile driver was blinded by street lights, used the following language: "The defendant did not deny that the decedent came to his death in the way above stated, but attempted to excuse the same upon the ground that just before the collision the street lights which he had passed were reflected into his eyes by the windshield of his car so that he was unable to see in front of him, and that this temporary blindness was the cause of the collision. His own story demonstrates his lack of care. No man is entitled to operate an automobile through a public street blindfolded. When his vision is temporarily destroyed in the way which the defendant indicated, it is his duty to stop his car, and so adjust his windshield as to prevent its interfering with his ability to see in front of him. The defendant, instead of doing this, took the chance of finding the way clear, and ran blindly into the trolley-car behind which the decedent was standing. Having seen fit to do this, he cannot escape responsibility if his reckless conduct results in injury to a fellow being."

In the case of *Budnick* v. *Petersen,* 215 Mich. 678 [184 N. W. 493], the Supreme Court of Michigan lays down the rule that if the vision of an automobile driver is obscured by the glaring lights of an approaching car, it is his duty to slacken his speed and have his car under such control that he might stop it immediately if necessary. (See, also, *Gano* v. *Stoll etc. Co.,* 184 Wis. 492 [199 N. W. 48], and *Holsaple* v. *Superintendents Co.,* 232 Mich. 603 [206 N. W. 529].)

In *Pietsch* v. *McCarthy,* 159 Wis. 251 [150 N. W. 482], the Supreme Court of Wisconsin used the following language: "The plaintiff testified that he was proceeding at a rate of from ten to thirteen miles an hour, that his vision was so dazzled by the headlights of automobiles coming in the opposite direction that he could not see the wagon ahead of him, and that in this situation he proceeded a distance of one hundred feet without slackening his speed until he bumped into the wagon which he did not see until he struck it. It seems clear, under these facts, that he was

guilty of contributory negligence as a matter of law." It is true that the Supreme Court of Michigan has carried the rule further in relation to an automobile driver being required to limit his speed so that the car can be stopped within the radius of the vision afforded by his headlights, and that, if he does not do so, it is negligence as a matter of law. But there seems to be no conflict in the decisions which we have examined and which are referred to in the cases which we have cited, that when an automobile driver has been blinded by approaching lights, it is his duty to reduce the speed of his car.

In the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709], the circumstances presented and considered by the court were identical with those here being considered, to wit: The fact of an automobile driver not lessening his speed when blinded by approaching lights, the only difference being, in the instant case the sun takes the place of the approaching automobile. The Supreme Court, in deciding the Hatzakorzian case, adopted the opinion of Mr. Justice Hart of this court, and the facts considered are so applicable to this case that we set them forth. Referring to the automobile driver in question, it is there said: "He was traveling up to the time the glare reflected from the lights of the approaching automobile at the rate of 25 miles an hour; when the glare struck his eyes he was a distance of between 150 and 200 feet from where he collided with deceased; the glare so obstructed his vision that he was unable to see an object on the highway before him, although his lights were in good condition and under ordinary circumstances he was able by them to discern an object before him at a distance of from 75 to 100 yards; he did not see the deceased until after his car struck him; when the glare first struck his eyes and blinded him, with the result as indicated, he diminished the speed of his car so that thereafter and until he struck deceased, he was traveling at a speed of between 20 and 25 miles an hour; he did not put on his brakes, nor turn off either the gas or ignition; his brakes were in perfect order and he said he could have stopped his car between the time the glare first struck his eyes and the time he struck deceased, but that he did not do so, nor make any attempt to do so; that he was not anticipating the presence of pedes-

trians on the highway in front of him—in fact, his mind, he himself in effect stated, was not on the matter of whether he might or might not overtake a pedestrian. It is only necessary to compare the foregoing *résumé* of Kennell's own testimony with the requirements of the law with respect to the duties of operators of automobiles when driving over the highways of the state to force the conclusion that, from the time the glare from the lights of the approaching car first reflected through his windshield into his eyes, he proceeded on until he struck and killed the deceased with a degree of indifference or recklessness as to the rights and safety of others who might be ahead of him on the highway closely approaching, if indeed, not amounting, under the circumstances, as revealed by his own testimony, to gross negligence.'' We think this statement of the law a true and correct statement as applicable to the case at bar. The plaintiff, by his own testimony, was traveling thirty miles an hour, with his eyes blinded by the sunlight so that he could not or did not see the approach of the defendant's automobile. He did not slacken his speed during the time that he was blinded, but permitted his car to move forward under conditions rendering it impossible for him to see the defendant's car until he was within four or five feet of it. Thus, his negligence, by his own words, continued right up to and including the time when his automobile crashed into the one driven by the defendant. The case to which we have referred cites a number of other cases, among them, California cases holding: ''That it is the duty of a driver of an automobile to anticipate the presence of pedestrians upon the highway over which he is traveling, is thoroughly established as a part of the law of the road.'' This language was used in relation to circumstances where pedestrians were using the road, but is pertinent to conditions where automobile drivers may be anticipated as using a road.

In the case of *Donat* v. *Dillon*, 192 Cal. 426 [221 Pac. 193], where it was claimed that the defendant had the right of way, the court used the following language: ''A motorist must at all times use due care to avoid colliding with another; he must be ever alert and watchful so as not to place himself in danger, and while he may assume that others will exercise due care, he cannot, for that reason, omit any

of the care which the law demands of him. Assuming, therefore, that the defendant had the right of way, he was required to proceed across the intersection in a careful and prudent manner, ever watchful of the direction in which danger was most likely to be apprehended.''

As the testimony of the plaintiff, and the cases which we have cited, including the various sections of the California Vehicle Act, show that the plaintiff was traveling at an unlawful rate of speed, and that his unlawful rate of speed continued up until the time his car struck the defendant's car, and that the plaintiff at no time lessened the speed of his automobile as required by the law as set forth in the Hatzakorzian case, the conclusion is unescapable that he was guilty of contributory negligence as a matter of law and complies with the requirements set forth in the case of *Flores* v. *Fitzgerald,* 204 Cal. 374 [268 Pac. 369].

 There is nothing in the California Vehicle Act which exempts an automobile driver, traveling upon a boulevard or arterial street or highway, from the restrictions, limitations and obligations imposed by the sections to which we have referred and the cases which we have cited; and whether blinded by the rays of the sun or the glaring lights of an approaching automobile, a driver who, under such circumstances, fails to slacken his speed, and without seeing it runs into another car, cannot escape the effects of his own contributory negligence simply because the street or highway is marked ''arterial.''

The defendant's motion for a nonsuit should have been granted.

The judgment is reversed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 15, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 17, 1930.

All the Justices concurred.