[Civ. No. 6565.   Third Dist.   Apr. 29, 1942.]

FANNIE E. ROSELLE, as Administratrix, etc., Appellant, v. CLAUDE E. BEACH, Respondent.

Lovett K. Fraser, Burt W. Busch and Everett H. Roan for Appellant.

Hoge, Pelton & Gunther, H. G. Crawford, Mannon & Brazier and A. Dal Thomson for Respondent.

DEIRUP, J. pro tem.—Plaintiff has appealed from a judgment that was entered pursuant to a verdict of a jury in favor of the defendant. The action arose out of a collision between a Ford sedan and a Ford pick-up near the center of the intersection of Fifth and Forbes Streets in the city of Lakeport. The sedan, driven by the defendant in his lane northerly on Forbes Street, struck broadside the pick-up which was being driven by the plaintiff's intestate easterly on Fifth Street and the two cars came to rest near the northeast corner of the intersection. Harvey A. Roselle, the plaintiff's intestate, dropped dead the day after the accident. He had suffered from a serious heart ailment for a considerable time and the question whether his death was due to the accident or not was not determined, for the jury decided in favor of the defendant, Claude E. Beach, on the issues of the negligence of the respective drivers of the cars.

Fifth Street being 28 feet wide, the distance from its center

line to the southerly line of the intersection is 14 feet. The distance that Beach traveled into the intersection before his sedan hit the other car was therefore less than 14 feet. Forbes Street is 44 feet wide; therefore Roselle traveled 22 feet into the intersection before he reached the center line and also a few feet farther than that before his pick-up was hit by the sedan. If the two cars had entered the intersection at a lawful rate of speed at approximately the same time Beach, coming as he did from the right, would have had the right of way, but it was his duty to yield the right of way to Roselle if the latter entered the intersection first. (Veh. Code, § 550.) Either Roselle had the right of way or he was traveling very much faster than Beach. ▇ The evidence of speed is very unsatisfactory. Beach estimated his own speed at 15 miles per hour and made the same estimate of the speed of the Roselle pick-up, but he said that he did not see the Roselle car until immediately before the impact, and at the time of the accident he said that he did not see the Roselle car at all. He admitted that he had been working in the rain and was in a hurry to get home. So far as the record shows no person other than Beach and Roselle saw the accident. Counsel for appellant claims that the position of the cars and the testimony of a traffic officer, based on skid marks, prove that Beach was traveling at a high rate of speed, but the actions of cars after a collision are so unpredictable that evidence of this character has little probative value. (*Corcoran* v. *Ward*, 115 Cal. App. 180 [1 P. (2d) 455]; *Rudat* v. *Carithers*, 137 Cal. App. 92 [30 P. (2d) 435]; *Johnston* ⸰ v. *Peairs*, 117 Cal. App. 208 [3 P. (2d) 617]; *Fishman* v. *Silva*, 116 Cal. App. 1 [2 P. (2d) 473].)

▇ ▪ It was raining hard at the time of the collision and the water on the front left window of the sedan prevented Beach from seeing the other car. It was therefore negligence on his part to enter the intersection without taking unusual precautions. (*Havens* v. *Loebel*, 103 Cal. App. 209 [284 Pac. 676]; *Havens* v. *Loebel*, 103 Cal. App. 294 [284 Pac. 717]; *Falasco* v. *Hulen*, 6 Cal. App. (2d) 224 [44 P. (2d) 469].) ▇ Roselle, on the other hand, had placed a solid black curtain over his right-hand window so that he could not see the Beach car coming from his right. He, too, was therefore negligent. (See Veh. Code, § 676.) If he had seen the Beach car he might well have prevented the accident. It was therefore within the province of the jury to determine that his negligence

contributed to the accident proximately and we cannot say that its verdict is not supported by the evidence.

Appellant specifies certain instructions given by the trial court at the request of the respondent and bearing on the presumption of care as constituting reversible error:

"The presumption in this case is that the defendant was traveling at a lawful rate of speed, and on the proper side of the highway at all times. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence.

"Likewise, there is a presumption in this case that the defendant was free from fault, and this presumption follows him throughout the entire case, unless it has been overcome by other evidence.

"Merely because the plaintiff has brought this action against the defendant, you cannot presume that the defendant is at all liable. On the contrary, the law presumes that the defendant is not liable for any damage to the plaintiff."

The court also gave the following instruction on behalf of the plaintiff:

"The presumption is that every man obeys the law and the presumption in this case is that the deceased was traveling at a lawful rate of speed and on the proper side of the highway at all times. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence."

The propriety of the giving of such instructions has been discussed in our appellate courts many times, and the principles of law that are applicable thereto are, in our opinion, fully established. ■ Where, as in the case of Roselle, a participant in an accident is dead or, for any other reason, is unable to give an account of what occurred and his side of the case is not fully covered by the testimony of witnesses called on his behalf, it is proper to give such an instruction as was given on behalf of the plaintiff. (*Westberg* v. *Willde,* 14 Cal. (2d) 360 [94 P. (2d) 590]; *Ellison* v. *Lang Transportation Co.,* 12 Cal. (2d) 355 [84 P. (2d) 510]; *Schulman* v. *Los Angeles Ry. Corp.,* 44 Cal. App. (2d) 122 [111 P. (2d) 924]; *Scott* v. *Sheedy,* 39 Cal. App. (2d) 96 [102 P. (2d) 575].)

■ But if, as in the case of Beach, a participant testifies to his own actions or has witnesses who explain them, even though

there is a presumption of law that "a person takes ordinary care of his own concerns" (Code Civ. Proc., § 1963, subd. 4), he should not be given the benefit of the presumption because it can have no weight. For this reason the giving of such an instruction in such a case is uniformly held to be error unless it is made applicable to both of the parties, and in certain instances judgments have been reversed for this reason. (*Clary* v. *Lindley*, 30 Cal. App. (2d) 571 [86 P. (2d) 920]; *Kelly* v. *Fretz*, 19 Cal. App. (2d) 356 [65 P. (2d) 914]; *Mar Shee* v. *Maryland Assurance Corporation*, 190 Cal. 1 [210 Pac. 269].)

More often, however, the appellate court has determined that the error is not sufficiently prejudicial to warrant a reversal for the reason that the facts proven and the other instructions given by the court preclude the inference that the jury was misled. (*Tuttle* v. *Crawford*, 8 Cal. (2d) 126 [63 P. (2d) 1128]; *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 P. (2d) 709]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 Pac. 884]; *Stroh* v. *Bauman*, 37 Cal. App. (2d) 241 [99 P. (2d) 337]; *Beck* v. *Sirota*, 42 Cal. App. (2d) 551 [109 P. (2d) 419].)

Such instructions should not be given by the trial court in any case in which the party for whom they are requested has had an opportunity to prove his case in court. But we are bound by the provisions of section 4½ of article VI of the Constitution to the effect that "No judgment shall be set aside . . . on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (*Tuttle* v. *Crawford, supra; Rogers* v. *Interstate Transit Co., supra.*) We have examined the instructions that were given by the trial court in reference to negligence, contributory negligence, the burden of proof and the law relative to accidents of this kind. They are complete and fair. The nature of the accident was brought to the attention of the jury. We do not believe that the verdict was affected by the erroneous instructions and we hold, therefore, that the error was not sufficiently prejudicial to warrant a reversal of the judgment.

In the examination of one of the jurors counsel for the plaintiff asked: "You have no interest in any insurance company who are interested or engaged in the business of insuring automobile owners against liability for negligence due to

the operation of their automobile, have you?'' The juror answered, ''No.'' Immediately thereafter counsel for defendant asked him, ''You understand, no insurance company is interested in this case?'' The juror queried, ''In no connection whatsoever?'' To this counsel replied, ''No, the court will instruct you that the only persons interested in this case are Mrs. Roselle, individually, and as administratrix of the estate of her husband, and Mr. Beach, and nobody else is interested in the case. Now, if the court gives you that instruction, will you follow that instruction?'' The answer was ''Yes.''

At the conclusion of the trial the court gave the type of instruction that has been approved in *Brown* v. *Yocum,* 113 Cal. App. 621 [298 Pac. 845] ; *Miller* v. *Cranston,* 41 Cal. App. (2d) 470 [106 P. (2d) 963], and *Elmore* v. *County of Lassen,* 10 Cal. App. (2d) 229 [51 P. (2d) 481], adding thereto the following:

''This is an action between plaintiff on the one hand and defendant on the other hand, and no other person or persons, companies or corporations are interested in this action, and it would be contrary to your duties as jurors, and contrary to your oaths as jurors, to consider any other person or persons, company or corporation as parties to or interested in this action.''

Appealing to the rule of law that proof of insurance by the plaintiff is error or misconduct of so extreme a nature that it cannot be cured but must result in a mistrial or reversal of a judgment (*Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954] ; *Squires* v. *Riffe,* 211 Cal. 370 [295 Pac. 517]), counsel for appellant argues that such a statement as was made by counsel for the defendant should be held to be equally prejudicial.

We think that the effect upon the juror of the attorney's statement was to refer him to the instruction which he knew the court would give for the true situation in respect to insurance. And that instruction tended to negative insurance as fully as did the statement that was made by counsel. Such an instruction is correct for the reason that, as a matter of law, there is no one in the case other than the plaintiff and the defendant. The question which counsel for the plaintiff asked was proper for the purpose of ascertaining the frame of mind of the venireman. If one actually is interested in a casualty company he might well be prejudiced against damage suits. An affirmative answer might lead to proof of actual bias or at

least furnish a reason for a peremptory challenge. But the purpose of asking the question nearly always is to give to the juror and all other persons within hearing the impression that any judgment that may be entered will be paid by an insurance company, so that the jury need not be concerned about inflicting hardship upon the defendant, and might therefore be inclined not only to find in favor of the plaintiff, but also to be more generous in its verdict. Inasmuch as jurors are likely to draw such a conclusion and act upon it, the courts are required to attempt to counteract the effect of the question by giving the type of instruction that we have alluded to. In view of the prevalence of insurance today, it is likely that the question asked by the plaintiff, coupled with what may be said by counsel for the defendant and also the instruction that the court gives, have the effect of convincing the jury that there is no insurance in cases where it would assume that there might be. But if this is the effect, the plaintiff cannot complain; for it is not necessary for him to open up the subject.

Counsel objects also to the portion of the instruction which we have quoted because it assured the jury that no person other than the plaintiff and defendant had any interest in the case, whereas the children of the decedent would be entitled to participate in any judgment collected by the plaintiff. The jury was, of course, fully instructed to consider the pecuniary loss to the children, but counsel argues that the two instructions were wholly inconsistent and that it is impossible to tell which one the jury accepted. One answer to this argument is that the jury must have understood that the plaintiff represented not only herself but other persons as well and that the instruction referred to still other persons. The other is that the jury never got to the point of considering the right either of the plaintiff or anyone else to recover damages in any specific amount, for it decided that no one was entitled to recover. For the same reason it is unnecessary for us to consider whether an instruction to the general effect that the jury could not consider the loss of the care, comfort and society of a loved one, but could only consider pecuniary loss, was fatally at variance with another instruction which stated the law on this subject correctly. This instruction also is moot for the reason that the verdict was for the defendant.

In connection with his motion for a new trial counsel for plaintiff presented the affidavits of ten jurors to the effect that

they had been misled by the arguments of one of their number and believed that a new trial should be granted. A juror is never permitted to impeach his verdict in this manner and affidavits of this kind can serve no purpose. (*Toomes* v. *Nunes,* 24 Cal. App. (2d) 395 [75 P. (2d) 94].) It obviously would not do to permit counsel to reargue the facts and the law with each juror after the verdict in order to induce him to petition the court to grant a new trial.

The judgment is affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1942. Curtis, J., and Carter, J., voted for a hearing.