Filed 9/23/20  Conservatorship of S.I. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of S.I. | 2d Civil No. B303895 (Super. Ct. No. 17PR-0324) (San Luis Obispo County) |
| PUBLIC GUARDIAN OF THE COUNTY OF SAN LUIS OBISPO,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>S.I.,<br><br>    Objector and Appellant. | |

S.I. appeals from the trial court's reappointment of the Public Guardian of the County of San Luis Obispo (Public Guardian) as his conservator pursuant to the Lanterman-Petris-

Short Act. (Welf. & Inst. Code,[1] § 5000 et seq.) S.I. contends: (1) the court violated his rights to due process, equal protection, and a fair trial; (2) counsel provided ineffective assistance; and (3) the court erred when it determined that a licensed board and care facility was the least restrictive placement. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In September 2019, the Public Guardian petitioned for reappointment as S.I.'s conservator. At a November 15 bench trial, Dr. Rose Drago testified that S.I. was gravely disabled due to his schizoaffective disorder. He did not actively hallucinate, but could be "very hypomanic," "very grandiose," and "paranoid at times."

Dr. Drago said that S.I. took a variety of medications. His compliance with his medication regimen "waxes and wanes." He previously refused to take certain prescriptions, was "not thrilled about" his current medications, and tried to bargain his way out of taking them. He instead wanted to use the non-prescription cannabis products that he had used in the past. He had also previously used methamphetamine. Dr. Drago believed that S.I. would become homeless and psychotic if he were released into the community and resumed his drug use.

At the time of trial, S.I. lived in an unlocked, structured board and care facility, which Dr. Drago opined was the least restrictive placement for him. He was subject to restrictions because he had tried to take a bus to San Luis Obispo. Despite this attempt to "elope," S.I. was "more or less stable" at the facility.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

Dr. Drago said that S.I. wanted to return to Sunny Acres, where he had been placed previously. He had done well there initially, but then started using drugs and became unstable and psychotic. Dr. Drago did not know whether Sunny Acres would permit S.I. to return.

After Dr. Drago testified, S.I. told the trial court that he wanted to testify. The court permitted him to do so, and asked him why he believed he should no longer be subject to a conservatorship. S.I. replied that he wakes every morning in prayer, takes a shower, and gets his clothes "nice and clean." He cleans his room and shares his possessions with others. He no longer smokes marijuana.

The trial court asked S.I. about his bus trip to San Luis Obispo. S.I. said that he knew the trip was a "bad move," but he wanted to get a job to show that he could get back on his feet. He also wanted to visit a radio station because he appreciated music and considered himself a good musician. He acknowledged that staff did not give him permission to leave and did not know that he had done so. He was placed "in-house" once he returned to the facility from his trip.

The trial court asked S.I. what it should think about the incident. He replied, "You feel this guy's gone downhill a little bit, huh?" The court answered, "Yeah." The court continued: "You may not [*sic*] stay in a conservatorship. You may not. But at this juncture, I have to say that there is a sufficient basis for this court to find that you do continue to have a grave disability." After a few more questions, the court made that finding, without permitting counsel to question S.I. or argue on his behalf. Consistent with Dr. Drago's testimony, the court

3

also found that S.I. could not refuse medical treatment, have a driver's license, possess a firearm, or contract in excess of $50.

On December 3, the trial court issued a written order reappointing the Public Guardian as conservator for the one-year period commencing December 14, 2019.  The order reiterated the findings made at the November 15 hearing.  It also set forth the Public Guardian's duties as conservator, stated that there was no suitable alternative to conservatorship, and said that the least restrictive and most appropriate level of care for S.I. was a licensed board and care facility.

S.I. filed a notice of appeal from the judgment on January 27, 2020.

## DISCUSSION

*Timeliness of S.I.'s appeal*

Before turning to S.I.'s contentions, we first consider—and reject—the Public Guardian's claim that S.I.'s appeal is untimely.

Rule 8.308(a) of the California Rules of Court provides that a conservatee's notice of appeal "must be filed within 60 days after the rendition of the judgment or the making of the order being appealed."  (See Cal. Rules of Court, rule 8.480(a) [rules 8.304 through 8.368 and 8.508 govern appeals in conservatorship cases].)  In general, this requires a conservatee to file a notice of appeal within 60 days of the trial court's oral pronouncement of its order.  (*Conservatorship of Ben C.* (2006) 137 Cal.App.4th 689, 695.)  Here, however, the court's written order—filed December 3, 2019—included several provisions not included in its November 15 oral pronouncement:  the appointment of the Public Guardian as conservator, the scope of the Public Guardian's duties, the finding that there was no

4

suitable alternative to conservatorship, and the finding that the least restrictive placement for S.I. was a licensed board and care facility. The 60-day time period thus began to run from the filing of the written order, rendering S.I.'s notice of appeal timely. (*In re Markaus V.* (1989) 211 Cal.App.3d 1331, 1337.)

*S.I.'s treatment as a witness*

S.I. contends the trial court violated his constitutional rights to due process, equal protection, and a fair trial when it called him as a witness, engaged in argumentative questioning, and made findings without permitting examination or argument by counsel. But S.I. did not object to any of these alleged errors during the proceedings below. His contentions are forfeited. (*People v. Mickey* (1991) 54 Cal.3d 612, 664-665 [forfeiture rule applies to constitutional claims]; see *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 967 [conservatee forfeited right to jury trial by participating in bench trial without objection].)

*Ineffective assistance of counsel*

Alternatively, S.I. contends counsel did not provide effective assistance because he did not object to the trial court's alleged errors. A potential conservatee "has a statutory right to effective assistance of counsel." (*Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710; see § 5365.) To show that counsel provided ineffective assistance, the conservatee must show that: (1) counsel performed deficiently, and (2) that deficient performance resulted in prejudice. (*In re Jones* (1996) 13 Cal.4th 552, 561; see *Strickland v. Washington* (1984) 466 U.S. 668, 687.) S.I. has failed to make these showings here.

"Although 'the trial court has both the duty and the discretion to control the conduct of the trial' [citation], 'the Due

5

Process Clause clearly requires a "fair trial in a fair tribunal" [citation], before a judge with no actual bias against the [proposed conservatee] or interest in the outcome of [a] particular case. [Citations.]' [Citation.]" (*People v. Harris* (2005) 37 Cal.4th 310, 346-347.) Our role as "a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.'" (*Id.* at p. 347.) "'Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the conservatee] a fair, as opposed to a perfect, trial. [Citation.]' [Citation.]" (*Ibid.*) "[S]uch a violation occurs only where the [court] "'officiously and unnecessarily usurped the duties of the prosecutor and in so doing created the impression that [it] was allying [itself] with the prosecution."'" [Citation.]" (*Ibid.*, alterations omitted.)

The trial court did not assume the duties of the prosecution in the proceedings below. At minimum, a potential conservatee cannot be forced to testify about subjects that may incriminate them in criminal matters. (*Conservatorship of Bryan S.* (2019) 42 Cal.App.5th 190, 198; *Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 550.) Two recent decisions have gone further, concluding that equal protection principles require courts to allow conservatees to refuse to testify entirely. (*Conservatorship of J.Y.* (2020) 49 Cal.App.5th 220, 227-232, review granted Aug. 19, 2020, S263044; *Conservatorship of E.B.* (2020) 45 Cal.App.5th 986, 992-998, review granted June 24, 2020, S261812.) S.I. urges us to follow the latter decisions and conclude that the court below violated his rights when he testified.

We need not—and do not—consider that issue here because the trial court did not force S.I. to testify; he offered to do so. And during his testimony, the court did not ask him about any matters that could incriminate him. Counsel thus did not perform deficiently when he did not object to S.I.'s testimony. (*People v. Anderson* (2001) 25 Cal.4th 543, 587 [counsel need not lodge futile objection].)

Nor has S.I. shown that counsel performed deficiently when he did not object to the trial court's questions. S.I. claims that the court's questions about his use of marijuana and bus trip to San Luis Obispo were "irrelevant and argumentative" and "phrased to impose shame on [him]." But S.I. told Dr. Drago that he wanted to discontinue his medications and use cannabis products instead. And he said he went to San Luis Obispo to show that he could care for himself. Questions about these issues were thus directly relevant to the court's determination of whether S.I. was "in need of the state's care." (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225-226; see § 5008, subd. (h)(1)(A) [person is "gravely disabled" if they are "unable to provide for [their] personal needs"]; *Conservatorship of Guerrero* (1999) 69 Cal.App.4th 442, 446 [whether a person feels they do not need medication relevant to establishing conservatorship].) They "benefit[ted] the interests of [S.I.] as well as medical professionals, [the] court, and [the] public." (*Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 828.)

We also reject S.I.'s claim that counsel performed deficiently when he did not request closing argument. "Ordinarily, unless the court otherwise directs, the trial of a civil action tried by the court without a jury shall proceed in the order specified in [Code of Civil Procedure s]ection 607." (Code Civ.

7

Proc., § 631.7.)  Subdivision (7) of section 607 of the Code of Civil
Procedure permits—but does not require—closing arguments.
And prior cases have approved the lack of closing arguments in
civil cases where, as here, the issues were "largely factual."
(*Givens v. Johnson* (1946) 73 Cal.App.2d 139, 142-143; see also
*Dam v. Bond* (1926) 80 Cal.App. 342, 346-347 [no absolute right
to closing argument in civil proceedings].)  During the
proceedings below, counsel might have concluded that a closing
argument would not materially affect the trial court's decision.
Given the state of the evidence, we cannot say that conclusion
was erroneous.  We thus cannot fault counsel for failing to
request something that was not required.

S.I.'s reliance on a number of criminal cases that
have reached the opposite conclusion is misplaced.
Conservatorship proceedings are civil in nature, and the
applicable proceedings are different than those that apply in
criminal cases.  (*Conservatorship of John L.* (2010) 48 Cal.4th
131, 147.)  S.I. has thus failed to show that counsel performed
deficiently when he did not object to the trial court's actions that
allegedly violated his due process, equal protection, and fair trial
rights in this civil case.

We reach the same conclusion regarding counsel's
lack of objection to Dr. Drago's testimony.  S.I. claims Dr. Drago's
testimony included case-specific hearsay, in violation of *People v.
Sanchez* (2016) 63 Cal.4th 665, 682-683, and the opinions of other
experts, in violation of *People v. Campos* (1995) 32 Cal.App.4th
304, 308.  But even if we assume that parts of Dr. Drago's
testimony were inadmissible, "the mere failure to object rarely
rises to a level implicating one's constitutional right to effective
legal counsel." (*People v. Boyette* (2002) 29 Cal.4th 381, 433.)

Perhaps counsel did not object because he did not want the Public Guardian to call other experts who would have reinforced Dr. Drago's opinion. (See, e.g., *People v. Bona* (2017) 15 Cal.App.5th 511, 522.) Or perhaps counsel concluded that an objection "would serve only to highlight [Dr. Drago's] undesirable testimony." (*People v. Catlin* (2001) 26 Cal.4th 81, 165.) Either way, we have no basis to conclude that "this is one of those 'rare' cases in which counsel's failure to object amounts to constitutionally deficient performance." (*Bona*, at p. 522.)

*Least restrictive placement*

S.I. contends the trial court erred when it determined that a licensed board and care facility was the least restrictive placement for him. We review this contention for substantial evidence (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134), and reject it.

When a trial court concludes that a conservatee is gravely disabled, the court must initially decide "the least restrictive alternative placement" for them. (§ 5358, subd. (a)(1)(A).) When deciding that placement, the court shall consider the report on available alternatives. (*Id.*, subd. (c)(1).) If that placement is not the conservatee's home or the home of a relative, it should be "as close as possible" to one of those places. (*Ibid.*) The conservator subsequently has discretion to move the conservatee to a more or less restrictive setting, without seeking court approval. (*Id.*, subd. (d)(1).)

Here, S.I. complains that the trial court did not have any information about whether a licensed board and care facility was close to his or a relative's home or whether it was possible for him to be placed in one of those homes. But as the Public Guardian points out, a trial court is only required to consider

9

those placements at the *initial* conservatorship appointment.  (Cf. *Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 353 [court must "set the initial level of placement"].)  The proceedings below concerned the Public Guardian's *reappointment* as S.I.'s conservator.

S.I. was instead entitled to a hearing on a less restrictive placement (§ 5358, subd. (d)(4)), which he received.  At that hearing the Public Guardian submitted evidence in support of S.I.'s placement, and S.I. said that he was happy to remain there.  Nothing more was required.  (*Conservatorship of Carol K.*, *supra*, 188 Cal.App.4th at p. 134.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

10

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Jean F. Matulis, under appointment by the Court of Appeal, for Objector and Appellant.

Rita L. Neal, County Counsel, Chelsea K. Kuhns, Deputy County Counsel, for Petitioner and Respondent.